# Edward Goldstein, Appellee, v. H. S. Greenstone, Appellant.

1. SALES—*when purchaser cannot recover from vendor amount paid to third person.* If a consignment of goods were a part of the stock of goods sold in bulk without compliance with the Bulk Sales Law, any suit which the creditor could have brought against the purchaser of the stock would have availed nothing, and such purchaser was not authorized to pay the bill therefor and could not recover the amount so paid from his vendor.

2. FRAUDULENT CONVEYANCES—*validity of sale of stock of goods without compliance of Bulk Sales Act.* Under the Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶ 1), a sale of a stock of goods without compliance therewith is void as against creditors but is good as between the parties.

3. FRAUDULENT CONVEYANCES—*rights of creditor and liability of vendee under Bulk Sales Act.* The Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶¶ 1-3) gives a creditor no lien upon nor title to goods and creates no liability from the vendee of a stock of goods to a creditor of the vendor.

4. INSTRUCTIONS—*instruction assuming controverted fact as erroneous.* An instruction which assumes a controverted fact is erroneous.

Appeal from the Circuit Court of Morgan county; the Hon. NORMAN L. JONES, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded. Opinion filed January 4, 1922.

WILSON & BUTLER, for appellant.

BELLATTI, BELLATTI & MORIARTY, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

Appellant was the proprietor of a store in Jacksonville known as the Emporium. Appellee entered into negotiations with appellant for the purchase of the same, which resulted in the parties agreeing upon the terms and conditions of the sale at Springfield, December 16, 1920, at which time and place appellee gave appellant a check for $12,000 as the purchase price

therefor. The parties immediately went to Jacksonville to carry out the details of the sale. A transfer of the lease of the building to appellee was procured and on the morning of December 17, the parties went to a lawyer and had prepared a bill of sale as an evidence of the sale.

The bill of sale recited that: "Henry S. Greenstone, in consideration of twelve thousand dollars ($12,000.00) in hand paid, the receipt whereof is hereby acknowledged, does hereby bargain, sell and deliver unto Edward M. Goldstein the following goods and chattels, to wit: All of the stock of goods, merchandise, fixtures, chattel property of every kind, character and nature whatsoever contained in the following described premises" (describing the premises). It also contained the following clause: "And the said Henry S. Greenstone does avouch himself to be the true and lawful owner of said goods and chattels, that he has full power, good right and lawful authority to dispose of said goods and chattels, in manner as aforesaid, and that he will and his heirs, executors and administrators shall warrant and defend the said bargained property unto the said Edward M. Goldstein, executors, administrators and assigns, from and against the lawful claims of all persons."

There is a sharp conflict in the evidence as to just when possession of the store and stock of goods was delivered by appellant to appellee, appellant contending that such delivery was made on the evening of December 16, and appellee contending that it was not made until after the delivery of the bill of sale, which took place sometime on December 17, the parties contradicting each other in their testimony as to the exact time. It is evident, however, that the parties, at the time, intended the sale to take effect as of the time of the payment of the purchase money, December 16, as on the morning of December 17, appellant gave appellee a check for $174.73 for the receipts of the store for December 16.

At the time of the sale there was no affidavit as to creditors made by appellant, as provided by the Bulk Sales Act (Cahill's Ill. St. ch. 121a, ¶ 1).

The evidence on the part of the appellee showed that some time between 9 and 11 o'clock on the morning of the 17th, the express company delivered to the Emporium a consignment of seventy-nine dresses, in four packages, from the National Garment Company, the consignment being made December 9. These goods were checked in by a representative of the express company, who says that Mr. Goldstein was present. He was not sure whether it was appellee or his brother. The four packages were receipted by Herman L. Goldstein, who signed his initials "H. L. G." to the express receipts, who testified that although not in the employ of appellant, he was acting for him, as a matter of accommodation, in signing the receipts. Appellant, on the other hand, testified that Herman never acted for him and that appellant had nothing to do with the business of the store on December 17 as he had turned possession of the store over to appellee December 16.

This consignment of goods not being paid for by appellant, appellee paid the National Garment Company for the same and brought suit in attachment against appellant, the ground of the attachment being that appellant was not a resident of Illinois.

Appellee's declaration consisted of the common counts, in addition to which he filed a bill of particulars as follows:

"To money had and received to the use of the plaintiff by the defendant upon the sale by the defendant to the plaintiff of the defendant's stock of merchandise known as The Emporium, at which time the plaintiff paid to the defendant for said stock of goods the sum of $12,000, and at which time and upon the payment of said purchase price, the defendant agreed and promised the plaintiff that he, the defendant, would pay a certain bill of the National Garment Company,

in the sum of five hundred ninety-three and seventy-five hundredths dollars ($593.75), for a certain invoice of ladies' dresses, prior to that time ordered by the defendant from the National Garment Company, and constituting a part of the stock of goods sold by the defendant to the plaintiff, and which bill the defendant neglected and refused to pay, and which bill the plaintiff was compelled to pay to protect his stock of goods so purchased from the defendant." Appellant filed the general issue and upon these pleadings the case was tried, the trial resulting in a judgment for appellee against appellant for $481.65 and against the Ayers National Bank, which had been summoned as garnishee, for $168.07, from which judgment appellant has appealed.

It is contended by appellant that appellee is not entitled to recover under the pleadings in this case.

Appellee testified that the National Garment Company was threatening to sue him for the bill in question and that he paid the bill to save his credit and his good name. If appellee's testimony is true and the consignment of dresses in question were a part of the stock of goods of The Emporium sold appellee by appellant, then any suit which the National Garment Company could have brought against appellee would have availed nothing. The National Garment Company had parted with its title to the goods and the only claim it had against anyone was a claim against appellant. While it is true that under the Bulk Sales Law (Cahill's Ill. St. ch. 121a, ¶ 1) the sale was void as against creditors, as between the parties it was good. This Bulk Sales Law (Cahill's Ill. St. ch. 121a, ¶¶ 1-3) gave the National Garment Company no title to nor lien upon the goods, and unlike the law of Wisconsin and some other States it created no liability from the vendee to the creditor. The creditor's only remedy was against the vendor for the purchase price

of the goods, and as against the creditor, in any proceeding resultant therefrom, the sale is considered void.

Appellant did not request appellee to pay the bill for him and, under the circumstances shown by the evidence, even if appellee's testimony be true, appellee had no right to make appellant his debtor without his consent. It may not have been to appellant's interest to have had the claim paid at that time. Appellee had no right to usurp the control of appellant's business and deprive him of any opportunity to satisfy, postpone or compromise the demand. The chances for such negotiations are frequently important and valuable to the debtor, and third persons have no right to deprive him of such chances. *Francisco v. Wright,* 7 Ill. (2 Gilm.) 691; *Dedman v. Williams,* 2 Ill. (1 Scam.) 154; *Fowler v. Hall,* 7 Ill. App. 332.

From the views expressed above, it follows that all appellee's evidence as to threats of the National Garment Company and its attorney to bring suit against appellee were incompetent.

One of the controverted questions of fact was as to whether or not the dresses had been delivered to appellant prior to the consummation of the sale. Appellee's second instruction, which assumes this controverted fact, was therefore erroneous.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*