(No. 23117
Lawrence Coon, Appellee, *vs.* T. W. Doss, Appellant.

*Opinion filed October 24, 1935.*

HERRICK, J., took no part.

W. A. Doss, CARL I. GLASGOW, and B. E. MORGAN, for appellant.

JOHN R. FITZGERALD, and CHARLES F. EVANS, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

On April 5, 1934, T. W. Doss obtained judgment by confession in the circuit court of Piatt county for $904.45, the balance remaining unpaid on a note executed by Taylor Coon, payable to the Croninger State Bank of Cisco and assigned by the bank to Doss. An execution was issued on the judgment, and on June 30, 1934, the sheriff of Macon county levied upon certain livestock and farm machinery in the control and possession of Lawrence Coon, son of

Taylor Coon, as the latter's property. Eleven days later Lawrence Coon (hereinafter referred to as the claimant) instituted a trial of the right of property in the county court of Macon county. His claim was for the property levied upon under the execution in favor of T. W. Doss (hereinafter referred to as the defendant). A jury returned a verdict finding the issues for the claimant and judgment was rendered on the verdict. The defendant prosecuted an appeal to the Appellate Court for the Third District and that court affirmed the judgment. Upon the petition of the defendant the Appellate Court granted a certificate of importance and allowed a further appeal to this court.

The pertinent facts disclosed by the evidence are as follows: On August 9, 1927, Taylor Coon executed and delivered to the Croninger State Bank his unsecured note for $2000, (the note involved in this litigation,) due in six months, with interest at seven per cent. Coon had been engaged in the business of farming on a rented farm of 320 acres in Macon county since 1895. On November 13, 1930, he executed a bill of sale to William L. Alexander, his landlord, for the major portion of the personal property owned and used by him on the farm, for the expressed consideration of $7016. At that time Coon owed the bank $785 in principal on the note and interest on this amount from April 25, 1930. It is conceded that no attempt was made to comply with the provisions of the Bulk Sales act. Afterwards, on the same day, Alexander leased his farm to the claimant for the period from March 1, 1931, to March 1, 1936, and sold and transferred the same personal property to him by a second bill of sale. The consideration stated in this bill of sale was also $7016. The property included in the bills of sale remained in the possession and control of the claimant after November 13, 1930. More than three years later, namely, on March 3, 1934, the Croninger State Bank sold and assigned to the

defendant all of its assets, including the note executed by Taylor Coon on August 9, 1927, and upon which $666.14 in principal, and interest thereon from April 15, 1931, was then due.

To obtain a reversal of the judgment the defendant makes the contention that she was a creditor of Taylor Coon within the contemplation of the Bulk Sales act and therefore entitled to treat the sale as a nullity and levy on the property in question as his property. The defendant was not a creditor of Taylor Coon on November 13, 1930, when he sold the personal property in controversy to Alexander and when the latter transferred it to the claimant. The evidence discloses that she did not become a creditor of Taylor Coon until March 3, 1934, when she purchased the note made by him to the Croninger State Bank in 1927. The question thus presented is whether the defendant, as the assignee of the bank, which was a creditor of Taylor Coon on November 13, 1930, can attack the sale of the property in controversy.

Section 1 of "An act to regulate the sale or transfer of goods, wares, merchandise, and other chattels in bulk and to provide certain penalties in connection therewith," approved May 3, 1913, in force July 1, 1913, and at the time of the sale, in 1930, (Cahill's Stat. 1929, p. 2300; Smith's Stat. 1929, p. 2566;) declares that a sale, transfer or assignment in bulk of the major part or the whole of a stock of merchandise and fixtures or other goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business, shall be fraudulent and void against his creditors, unless the vendee shall, at least five days before the consummation of such transaction, demand and receive from the vendor a written statement under oath of the vendor, containing a full and complete list of his creditors, their addresses and the amounts owing to each, or, in the event that there are no creditors, a state-

ment to this effect. The first section further provides that the vendee shall, at least five days before taking possession and at least five days before the payment of the purchase price, cause to be delivered to each creditor a written notice of the proposed purchase by him of the goods and chattels and of the price, terms and conditions of such sale. Penalties for the violation of section 1 are prescribed by section 2. By the third section it is provided that vendors and vendees under the act shall include corporations, associations, co-partnerships and individuals who shall be party to any sale, transfer or assignment of goods and chattels in bulk.

The defendant argues that assignees of persons who were creditors of a vendor at the time of a sale or transfer made in violation of section 1 of the Bulk Sales act may avail themselves of its provisions. A primary purpose of statutory construction is to ascertain the intention of the legislature. In determining this intent the courts always consider the language used, the evil to be remedied and the object to be attained. (*People* v. *Continental Illinois Bank,* 360 Ill. 454; *People* v. *Hughes,* 357 id. 524; *People* v. *Giles,* 268 id. 406; *Warner* v. *King,* 267 id. 82.) The first Bulk Sales act in Illinois was enacted by the General Assembly in 1905. (Laws of 1905, p. 284.) That act was expressly limited in its application to sales of stocks of merchandise and was held unconstitutional. (*Off & Co.* v. *Morehead,* 235 Ill. 40.) In 1913 the present statute was passed. (Laws of 1913, p. 258.) Its validity has been sustained. (*Johnson Co.* v. *Beloosky,* 263 Ill. 363.) This law is not limited in its operation to stocks of merchandise, fixtures and other property used in connection with a mercantile business. It applies to any sale in bulk of the major part or all of the goods and chattels of the vendor's business otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business. (*LaSalle Opera House Co.* v. *LaSalle*

*Amusement Co.* 289 Ill. 194; *Weskalnies* v. *Hesterman,*
288 id. 199.) In particular, the statute applies to the sale
by a farmer of the major part or all of the livestock and
agricultural implements used on his farm. *Weskalnies* v.
*Hesterman, supra.*

The Bulk Sales act in force in Illinois is similar to that
of the State of New York. Section 44 of the Personal
Property act of New York, corresponding to section 1 of
our Bulk Sales act, was construed in the case of *Apex
Leasing Co., Inc.* v. *Litke,* 173 App. Div. 323, 159 N. Y.
Supp. 707; affirmed by the Court of Appeals in 225 N. Y.
625. In the case cited the court said: "The Bulk Sales
act being in derogation of common law must be strictly
construed. The transfers therein specified are made void
as against the creditors of the seller, unless such creditors'
names are included in the inventory and a notice be given
to such creditors of such sale. The provisions of the stat-
ute, therefore, could hardly be applicable to parties who
were not creditors at the time of the transfer, and who
only might become creditors upon the happening of some
contingency." Similarly, the Illinois statute is in deroga-
tion of the common law and penal in nature, and must
therefore be strictly construed.

The manifest legislative intent disclosed by section 1
of the Bulk Sales act is the protection of creditors by
regulating the sale in bulk of the major part or the whole
of a stock of merchandise and other chattels except when
made in the usual course of business. The evil attempted
to be remedied was the sale or transfer of title to such
property without the knowledge of the creditors of the
vendor. To this end the statute affords protection to the
creditors by requiring that notice of proposed sales or
transfers shall be given them within a prescribed period,
so that they may assert their rights in the property promptly
against fraudulent transfers. The determination of what
persons are within the scope of the statute as creditors

must be ascertained from the language employed by the General Assembly. A statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from its provisions that intent will prevail without resorting to other aids for construction. (2 Lewis' Sutherland on Stat. Const. (2d ed.) secs. 348, 366; *People* v. *Continental Illinois Bank, supra; People* v. *Oregon State Savings Bank,* 357 id. 545.) The statute 'refers to neither assignees of creditors nor subsequent creditors. Obviously, the requisite notice could not be furnished to assignees of creditors nor subsequent creditors. It necessarily follows that only those who were creditors of a vendor at the time of the sale attacked are entitled to invoke the benefits of the Bulk Sales act.

The language of section 1 of the Bulk Sales act with respect to the persons who are deemed creditors is plain and unambiguous and must be given effect by the courts. The act makes certain sales or transfers of property fraudulent as to those persons who were creditors at the time of the sale or transfer. It does not purport to extend the benefits which it confers to those who were not creditors when the sale or transfer in bulk was made but who subsequently become creditors of the vendor. Courts have no legislative powers and may not incorporate in a statute provisions not within the intention of the legislature as expressed in the statute itself. *First Nat. Bank* v. *Hahnemann Institutions,* 356 Ill. 366; *Sup* v. *Cervenka,* 331 id. 459; *Downs* v. *Curry,* 296 id. 277.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE HERRICK took no part in this decision.