## CITY OF NEW YORK v. JOHNSON.
### No. 313.

Circuit Court of Appeals, Second Circuit.
July 26, 1943.

Thomas D. Thacher, Corporation Counsel, of New York City (Arthur A. Segall, Sol Charles Levine, and Samuel J. Warms, all of New York City, of counsel), for appellant, City of New York.

Alexander H. Rockmore, of New York City, for appellee.

Alfred A. Johnson, of New York City, as trustee in bankruptcy.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

United Upholsterers Company, Inc., in April, 1938, conveyed to Maxwell Sheraton, Inc., all of its assets, consisting of office furniture, machinery and fixtures, upon the assumption by the transferee of the liabilities of the transferor. At the time of the transfer the transferor owed $718.98 to the City of New York for sales and business taxes. An involuntary petition in bankruptcy was filed against Maxwell Sheraton, Inc., on April 1, 1940; there was an adjudication on April 3 and on May 20 the appellee, Alfred A. Johnson, qualified as trustee. Meanwhile the assets transferred to Maxwell Sheraton, Inc., by United Upholsterers Company were sold by a receiver in bankruptcy for $404.75. The receiver turned over the proceeds to the trustee who still holds them.

On October 21, 1941, the City of New York filed a petition in the bankruptcy court to impress a lien for the taxes due

it from United Upholsterers upon the $404.75 in the hands of the trustee. It is conceded by the trustee that the conveyance was in fraud of the creditors of United Upholsterers Company and in violation of the provisions of the Bulk Sales Act, New York Personal Property Law, § 44, Consol.Laws N.Y. c. 41, and that the $404.75, obtained from the sale, was the proceeds of assets fraudulently conveyed. The referee and Judge Goddard, on a petition by the city to review the decision of the referee, each held that the city of City York had established no lien as against the trustee and the petition of the city was dismissed accordingly. We think that these decisions were right and should be affirmed.

Under Section 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, the trustee was vested with all the rights of a judgment-creditor of the bankrupt to which the assets of United Upholsterers had been conveyed. Subdivision c provides that: "The trustee, as to all property in the possession or under the control of the bankrupt at the date of bankruptcy or otherwise coming into the possession of the bankruptcy court, shall be deemed vested as of the date of bankruptcy with all the rights, remedies, and powers of a creditor then holding a lien thereon by legal or equitable proceedings, whether or not such a creditor actually exists."

■ There can be no doubt that under Section 70, sub. c the trustee had "whatever rights any and all creditors could under the state law have obtained by legal or equitable proceedings before bankruptcy." In re Duker Ave. Meat Market, 6 Cir., 2 F.2d 699, 700, per Mack, J. See, also, Potter Mfg. Co. v. Arthur, 6 Cir., 220 F. 843, Ann.Cas.1916A, 1268. The result might perhaps be different if it were proved that all the transferee's creditors had notice of the fraud, but no such proof is offered here.

The important question, therefore, is, what under the New York law would have been the rights of creditors of the fraudulent grantor as against creditors of the transferee holding liens obtained through legal or equitable proceedings. Section 29 of the New York Personal Property Law as it existed prior to the enactment of Article 10 of the Debtor and Creditor Law read as follows: "§ 29. *Bona fide purchasers.*—This article does not affect or impair the title of a purchaser or incumbrancer for a valuable consideration, unless it appear that such purchaser or incumbrancer had previous notice of the fraudulent intent of his immediate vendor, or of the fraud rendering void the title of such vendor." Laws 1897, c. 417.

This was in substance a re-enactment of Section 5 of Part 2, Chapter VII, Title III, of the New York Revised Statutes, which was as follows: "§ 5. The provisions of this Chapter shall not be construed, in any manner, to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear, that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

During the time when § 5 was in force, the New York Court of Appeals upheld in Booth v. Bunce, 33 N.Y. 139, 157, 88 Am.Dec. 372, a levy by a creditor of the fraudulent transferor on the ground that it was prior in time to the levy by the creditors of the transferee, saying: "Had the defendants, as bona fide creditors of this [fraudulent transferee] (which was a valid corporation as to them), obtained a lien by a prior levy under their judgment, it would have presented a different question. Their equities were, doubtless, equal to the plaintiff's—it was so held when last before it was in this court—but the plaintiff was prior in time with his lien."

In Standard National Bank v. Garfield National Bank, 70 App.Div. 46, 75 N.Y.S. 28 (First Department), it was held under Section 29, supra, of the Personal Property Law as then in force that a creditor of a fraudulent grantee who had levied an execution against property fraudulently conveyed would prevail over the creditors of the grantor.

The appellant contends, however, that the New York rule as to priority was changed by the Debtor and Creditor Law, Consol.Laws N.Y. c. 12, L. 1925, ch. 254. Section 278 of that law provides that a fraudulent conveyance may be set aside "as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser," and by Section 272, "fair consideration is given for property, or obligation, a. When in

exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied * * *".

█ It is argued that an execution creditor is not a "purchaser for fair consideration" within the meaning of Section 278, supra, but it is evident that such a creditor is applying the proceeds of his attachment to the payment of an antecedent debt and is, therefore, within the statutory definition of "fair consideration" and stands in the position of a bona fide purchaser. The New York cases of Booth v. Bunce and Standard Nat. Bank v. Garfield Nat. Bank, supra, certainly so interpreted the meaning of the word "purchaser" under the New York statutes then applicable, or they could not have reached the conclusions they did. The contention of counsel for the appellant that these courts relied on no statute against fraudulent conveyances and were simply deciding in vacuo cannot be supported.

It was said by Judge Lowell in Re Mullen, D.C., 101 F. 413, 416, 417, that: "* * * it has been generally held in the United States that, where property conveyed in fraud of creditors is first attached by creditors of the transferee who have no knowledge of the fraud, their attachment will prevail as against the rights of defrauded creditors of the transferror. Parker v. Freeman, 2 Tenn. Ch. 612; Applegate v. Applegate, [107] Iowa [312], 78 N.W. 34, 38; Shallcross v. Deats, 43 N.J. L. 177. That this is so in Massachusetts is clear. Gibbs v. Chase, 10 Mass. 125."

See, also, Sampsell v. Imperial Paper Corp., 313 U.S. 215, 220, 61 S.Ct. 904, 85 L.Ed. 1293; Glenn on Fraudulent Conveyances, § 238, where the foregoing doctrine is repeated. We can see no reason to suppose that the New York statutes relating to fraudulent conveyances, which are now embodied in the Uniform Act, in any way vary the rule as to rights of creditors of a fraudulent transferee as they have generally been interpreted by the American courts.

█ Counsel for the City of New York make the further contention that the original transfer of assets was void as to the city because of failure to comply with the Bulk Sales Act, New York Personal Property Law, § 44. This section provides that a transfer in bulk of a stock of merchandise or fixtures "shall be void as against the creditors of the seller, transferrer or assignor" unless certain statutory provisions as to notice to creditors are complied with, and this was not done here. We can imagine no reason for holding that the words "shall be void as against the creditors of the seller", etc., were intended to go further than the similar words which have been held to make the sale merely voidable under the other statutes to prevent fraudulent conveyances which have been enacted from the time of the Statute of 13 Elizabeth to the present day.

We are referred to no authority and can see no reason for holding that the word "void" means more than "voidable" where the remedies given by the act are invoked, or that the consequences to bona fide purchasers from a fraudulent grantee are materially different under the Bulk Sales Act from such consequences under the Fraudulent Conveyance Act. The Bulk Sales Act gives the creditors of a transferor no rights other than equities which, like those of the creditors of a transferor under the Fraudulent Conveyance Act, can be cut off by bona fide purchasers. It has been pointed out that: "No procedure is prescribed in the statute by which it is to be enforced, except that the vendee may be made a receiver at the instance of a creditor and accountable for all the goods received by him by virtue of the sale." Klein v. Maravelas, 89 Misc. 466, 467, 152 N.Y.S. 584, 585 (App. Term, 2d Dept.)

We are not disposed to bring about any such result by a judicial addendum to the remedy provided in the Bulk Sales Act, which makes the city only a general creditor of the transferee.

For the foregoing reasons the order denying the City of New York a priority is affirmed.