Louis J. Corrigan, Appellee, v. Geneva Miller,
Appellant.

Gen. No. 10,360.

Opinion filed July 7, 1949. Released for publication July 27, 1949.

DYER & DYER, of Kankakee, for appellant.

T. R. JOHNSTON, of Kankakee, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

This is an appeal from a judgment of the county court of Kankakee county rendered in favor of Louis J. Corrigan on a trial of the right of property under the statute. The claimant, Louis J. Corrigan, served notice on the sheriff of Kankakee county, to the effect that he claimed certain property upon which the sheriff had levied an execution. The execution had been issued out of the circuit court of Kankakee county on a money decree rendered by that court on September 7, 1948 in favor of Geneva A. Miller and against Robert H. Miller.

The record discloses that the property in controversy was originally owned by said Robert H. Miller and consisted of more than ninety boxes of Tile-Tex, several sacks of cement and wax, ninety-six feet of steel stair nose, one-half roll of felt, a metal saw, a blow torch, iron and marble chisels, two cutting machines, one hundred forty feet of rubber tile and other materials and tools used by Miller in his Tile-Tex and marble contracting business in which he was engaged in Kankakee. These materials and equipment when levied upon were stored in a garage on property owned by Miller in Kankakee. On August 23, 1948, Corrigan, and one Robert Adame, both of whom were employees of Miller, accompanied by Miller, went to this garage. Adame had a key to it and the three made an inventory of the stock of goods and equipment used by Miller in his business. In the afternoon of the same day, the

three of them went to the office of Miller's attorney, where arrangements were made for the sale of these materials and equipment. Under the agreement Corrigan purchased the materials and equipment used in the Tile-Tex business for $817 and Adame purchased the materials and equipment used in the marble contracting business for $1,793. The arrangement was that Corrigan was to pay cash for that part of the materials and equipment purchased by him, and Adame should give his note for the materials and equipment purchased by him. The sale included substantially all of the material and equipment used by Miller in his contracting business. Shortly thereafter Miller left Kankakee and has never claimed any title to the property sold.

The evidence is that on September 3, 1948, Corrigan borrowed from the First Trust and Savings Bank of Kankakee $2,000 and secured the payment of the same by a trust deed on property owned by him in the City of Kankakee and that he used a part of the money derived from this loan to pay for the Tile-Tex business and equipment purchased from Miller, the payment being made on September 3, 1948. Corrigan did not attempt to take possession of the property, however, until September 7, 1948, at which time he found that it had been levied upon by the sheriff under an execution issued under a decree for separate maintenance in a suit instituted by Geneva A. Miller against the said Robert H. Miller.

It appears that on July 25, 1947, a decree was rendered by the circuit court of Kankakee county dismissing the complaint of Geneva A. Miller against said Robert H. Miller for separate maintenance. Subsequently this decree was reversed by this court and the cause remanded for further proceedings in the trial court. (*Miller v. Miller*, 333 Ill. App. 642.) Thereafter a hearing was had in the circuit court resulting in the rendition of a decree on July 19, 1948, granting

Geneva A. Miller separate maintenance for herself and minor child at the rate of $125 per month from July 25, 1947 and directing Miller to pay $500 of that amount on or before thirty days from the date of the decree and the remaining $1,000 on or before sixty days from the date of the decree; the succeeding payments to be made at the rate of $125 per month, in advance, commencing August 25, 1948. Miller was also directed to pay $800 attorney fee and the decree made the monthly payments and attorney fees a lien on certain real estate owned by Miller in the City of Kankakee and ordered that execution issue against such property upon default of Miller in making any of the payments. The proof is further that no payments were made on the decree and on September 7, 1948, a decree was rendered for ''Amounts past due under terms of decree of July 19, 1948.'' An execution was issued under this decree and the levy was made on the property in controversy.

Appellant contends the sale by Miller to appellee is fraudulent and void under the provisions of the Frauds and Perjuries Act. (Ill. Rev. Stat. 1947, ch. 59, par. 4 [Jones Ill. Stats. Ann. 55.04]) and also under the Uniform Sales Act (Ill. Rev. Stat. 1947, ch. 121½, par. 26 [Jones Ill. Stats. Ann. 121.30]) because of the failure of appellee to take possession of the property upon payment of the purchase money. Counsel also insists that the sale was fraudulent and void for failure of the parties to comply with the provisions of the Bulk Sales Law. (Ill. Rev. Stat. 1947, ch. 121½, par. 78 [Jones Ill. Stats. Ann. 121.01].) Appellee concedes that the provisions of section 78 of the Bulk Sales Act were not complied with but insists that a sale by a contractor of the goods and chattels used in his contracting business is not within the provisions of the Act. Counsel also insists that appellee did not purchase the major part of Robert H. Miller's goods and chattels, and that appellant was not a creditor of

Robert H. Miller for the reason that the decree for alimony or support money in a separate maintenance suit was not one upon which execution can issue until there has been a judicial determination of the amount actually due, and that both the decree of September 7, 1948, and the execution issued thereon are void for their failure to specify in words or figures the sum of money for which the decree was entered and which the sheriff was directed to make by his levy.

The controlling question in this case is whether the sale of the Tile-Tex materials and equipment by Miller to appellee was within the provisions of the Bulk Sales Act. It is admitted no effort was made to comply with that law.

The first Bulk Sales Law was adopted May 13, 1905. It was limited to stocks of merchandise sold otherwise than in the ordinary course of trade or in the regular and usual prosecution of the vendor's business. This act was held unconstitutional in *Charles J. Off & Co. v. Morehead,* 235 Ill. 40, since it imposed special burdens upon the vendors and purchasers of stocks of merchandise, not imposed upon those dealing in other classes of personal property. On May 3, 1913, the present Bulk Sales Law was approved and its provisions includes sales, transfers or assignments in bulk of the major part or whole of a stock of merchandise, or merchandise and fixtures, "or other goods and chattels of the vendor's business" otherwise than in the ordinary course of trade. This Act was construed in *G. S. Johnson Co. v. Beloosky,* 263 Ill. 363, and it was there pointed out that the Act of 1913 was not limited to sales of stocks of merchandise as was the former Act, but that it was made to apply to the sale of "other goods and chattels of the vendor's business." The court stated that in passing the new Act, the legislature had before it the decision in *Charles J. Off & Co. v. Morehead,* 255 Ill. 40, holding the former Act unconstitutional because it was special or class legislation,

and that to obviate that objection the new Act was made to apply indiscriminately to the sale of any goods and chattels in the manner inhibited by section 1 of the Act. In the later case of *Coon v. Doss,* 361 Ill. 515, that court reaffirmed its holding in the *Beloosky* case. It is there said (p. 519): ''This law is not limited in its operation to stocks of merchandise, fixtures and other property used in connection with a mercantile business. It applies to any sale in bulk of the major part or all of the goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business.''

The fact that appellee purchased the smaller part and Adame the larger part of the vendor's goods and chattels does not take the sale out of the provisions of the Bulk Sales Act. Between them, appellee and Adame purchased in a single transaction substantially the whole of the stock of goods and chattels and equipment used by Miller in his Tile-Tex and marble contracting business. Appellee purchasing all of the stock of merchandise and equipment used in the Tile-Tex part of his business, and Adame substantially all of the merchandise and equipment used in the marble part of his contracting business. By section 3, the Act is made to include vendors and vendees, copartnerships and individuals, and even sales made in good faith at public auction where the proper notice is not given by publication or posting of notices as provided in that Act. The words, ''vendors'' and ''vendees,'' ''corporations,'' ''co-partnerships,'' and ''individuals'' being used in their plural sense so as to include one or more persons. (Ill. Rev. Stat. 1947, ch. 121½, par. 80 [Jones Ill. Stats. Ann. 121.03]). Section 3 reads in part as follows: ''Vendors and vendees under this act shall include corporations, associations, co-partnerships and individuals, who shall be party to any sale, transfer or assignment, of goods and chattels in

bulk.'' The words, ''any sale, transfer or assignment, of goods and chattels in bulk'' are broad enough to include the sale in the instant case.

The sale of the Tile-Tex stock and equipment by Miller to appellee, and of the marble stock and equipment by Miller to Adame was the sale of the major part of the goods and chattels of the vendor's business, otherwise than in the ordinary course of trade and the regular and usual prosecution of the vendor's business and was clearly within the provisions of the Bulk Sales Act. Appellee testified that in addition to the goods which he bought, Adame purchased the marble and glazed tile business; that Adame bought all the material except what he purchased, and that Miller had nothing left that appellee knew of, and that the sale was not made in the ordinary course of Miller's business. In other words, that the transaction was a sale in bulk to appellee and Adame of the whole of Miller's business goods and chattels and equipment, otherwise than in the regular and ordinary course of Miller's business. Such a sale is within both the letter and the spirit of the Bulk Sales Act.

Appellant was a creditor of Miller within the clear intent and meaning of the word ''creditor'' as used in that act. As said in *Winthrop Restaurant Co. for use of Stock Yards Packing Co. v. Kournetas,* 265 Ill. App. 535, at page 538, 539: ''The word 'creditor' used in the statute has a broad meaning and was evidently intended to include not only general creditors, but judgment creditors and others having claims against the seller.'' In the instant case, appellant was a creditor of Miller to the amount of $1,500 for support and maintenance money, and the $800 attorneys fees as provided in the decree of July 19, 1948, and was in default in payment of the sum of $625 under that decree when the execution issued. The sale being fraudulent and void as to the creditors of Miller, the title to the property in controversy was still in Miller and

subject to levy and sale on execution while it remained in the possession of the vendee. *Tipsword v. Doss,* 273 Ill. App. 1; *Larson v. Judd,* 200 Ill. App. 420 and *Weskalnies v. Hesterman,* 288 Ill. 199.

It is immaterial in this collateral proceeding that the execution did not specify in letters or figures the sum of money to be made. In a trial of the right of property the only question is whether the property levied on belongs to the claimant, or to the defendant in the execution. *Harrison v. Singleton,* 3 Ill. 21. By giving notice to try the right of property, the claimant admits the regularity and validity of the proceeding against the defendant in the execution. This is true although the validity of the execution might be subject to attack in some other kind of a proceeding. *Dexter v. Parkins,* 22 Ill. 143; *Thompson v. Wilhite,* 81 Ill. 356; and *Fisher v. Bollman,* 258 Ill. App. 461, and the cases cited.

Since we hold the sale by Miller to appellee is fraudulent and void as to the creditors of Miller for the failure of the parties to comply with the provisions of the Bulk Sales Act, it is unnecessary to pass upon the other questions raised on this appeal. For the reasons given the judgment of the county court of Kankakee county is reversed and this cause is remanded with directions to enter judgment in favor of the appellant in accordance with the views herein expressed.

*Reversed and remanded.*