In the Matter of **CENTRAL METALLIC CASKET CO., Inc., Bankrupt.**

**No. 56-B-54.**

United States District Court
E. D. Wisconsin.
Jan. 28, 1959.

Samuel E. Gross, Milwaukee, Wis., for trustee.

Jacob N. Gross, Chicago, Ill., for Atlas Plywood Corp. and 39 other creditors.

Lewis W. Schlifkin, Chicago, Ill., for United American Metals Corp.

Walter F. Boye, Chicago, Ill., for bankrupt.

Godfrey & Godfrey, Elkhorn, Wis., for Elizabeth Forke.

Harry F. Franke, Milwaukee, Wis., for Internatl. Rolling Mills.

GRUBB, District Judge.

This is a review of orders entered by the Referee in Bankruptcy in the above entitled matter on January 7, 1958 and February 14, 1958, denying a petition by United American Metal Corporation and Atlas Plywood Corporation and thirty-nine other creditors, requesting that all funds, choses in action, accounts receivable and other property in the possession, custody and control of the trustee herein be distributed pro rata to the petitioners and members of the class they represent on the basis of their allowed or allowable claims, free and clear of all liens and encumbrances, subject only to the costs of administration and other costs herein.

Central Metallic Casket Co., an Illinois corporation, engaged in the manufacture of caskets, hereinafter called the Illinois corporation, physically transferred its assets from their Illinois location to Wisconsin between May 21 and June 1, 1955. The assets consisted of machines, fixtures and equipment. They were free and unencumbered by any liens or mortgages at the time of the transfer. They were consigned to premises leased to Central Metallic Casket Co., Inc. A corporation by that name, hereinafter called the Wisconsin corporation, was incorporated under the laws of Wisconsin on July 5, 1955. The officers and board of directors of the Wisconsin corporation were the same persons as those of the Illinois corporation. The minutes of the organizational meeting of the Wisconsin corporation of July 8, 1955 constitute the only formal record in this action of the transfer of the assets from Illinois to Wisconsin and reveal that the Wisconsin corporation assumed all debts and obligations of the Illinois corporation in the transaction. No notice of the transfer of the assets was given to creditors of the Illinois corporation under the Illinois Bulk Sales Law.

The Wisconsin corporation was adjudicated a bankrupt on April 3, 1956, following an involuntary petition filed against it by certain creditors of the Illinois corporation. Its assets were substantially those transferred to it by the Illinois corporation. These assets were sold pursuant to order of the Referee for approximately $40,000. Unsecured creditors of the Wisconsin corporation are about 30 in number, with claims totalling approximately $8,000 in amount. There are about 130 unsecured creditors of the Illinois corporation with filed claims totalling $50,600. The matter of rights of secured creditors is not before the court on this petition. Petitioners were creditors of the Illinois corporation at the time of the transfer of the assets. They appeared at the first meeting of the

creditors of the Wisconsin corporation on May 24, 1956 and joined in voting for the trustee in bankruptcy.

The Referee concluded as a matter of law that Illinois law governs the validity of the transfer. Non-compliance with the Bulk Sales Law of Illinois does not impress the funds produced on liquidation of the assets with an equitable trust for the benefit of the creditors of the Illinois corporation. It rendered the transfer voidable, rather than void as to the creditors. The Wisconsin corporation did not take the property upon a trust. The assumption agreement created a contract obligation on the part of the Wisconsin corporation. While the creditors of the Illinois corporation were not bound by the assumption agreement, they could elect to accept the benefits thereunder or reject the transaction as a fraudulent conveyance. By filing claims against the Wisconsin corporation, petitioners have waived their rights under the Bulk Sales Act and are now estopped to assert a lien on the goods or their proceeds in the hands of the trustee who is a hypothetical lien holder. The trustee, in effect, has attached the property and is, therefore, first in time in perfecting his lien as against creditors of the Illinois corporation.

Petitioners allege as error all conclusions of law of the Referee except that Illinois law governs the validity of the transfer. They contend that non-compliance with the Illinois Bulk Sales Law renders the transfer "fraudulent and void" as to creditors of the transferor. Therefore, the Wisconsin corporation as transferee obtained no title to the property. Notwithstanding the status of the trustee in bankruptcy under the provisions of Section 70, sub. c of the Bankruptcy Act, the trustee could obtain no lien against property to which the bankrupt had no title.

The question presented by the pleadings and the record on review involves a determination of the rights of unsecured creditors of a transferor, as against the trustee in bankruptcy of the transferee, in assets transferred without compliance with the requirements of the Bulk Sales Law of Illinois. The Illinois Bulk Sales Act provides that the sale, transfer, or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures otherwise than in the ordinary course of business is "fraudulent and void as against the creditors of the vendor", unless certain notices are given to creditors and a certain period of time allowed to elapse.[1]

Section 70, sub. c of the Bankruptcy Act, 11 U.S.C.A., 1952, § 110, sub. c provides:

" * * * The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists."

Petitioners predicate their rights squarely on the Illinois Bulk Sales Act. A transfer in bulk otherwise than in the ordinary course of business, by one corporation of its assets, used in the manufacture of caskets, to a successor corporation is within the purview of the Illinois Bulk Sales Act. Coon v. Doss, 1935, 361 Ill. 515, 198 N.E. 341, 102 A.L.R. 561; Kraft v. Garfield Park Community Hospital, 1938, 296 Ill.App. 613, 16 N.E.2d 936.

The Illinois Bulk Sales Act is in derogation of the common law and penal in nature. It must be construed strictly. Coon v. Doss, supra; United States v. Goldblatt Bros., 7 Cir., 1942, 128 F.2d 576, certiorari denied Goldblatt Bros. v. United States, 317 U.S. 662, 63 S.Ct. 63, 87 L.Ed. 532.

The act imposes restrictions and duties on the transferor and transferee

1. Illinois Revised Statutes (Association Edition) Chapter 121½, Section 78.

thereunder, and bestows benefits on the creditor of the transferor in case of non-compliance. Only persons contemplated by the Act and designated therein are subject to its restrictions and entitled to its benefits. Coon v. Doss, supra; Cozzi v. Pizzo, 1949, 337 Ill.App. 384, 86 N.E. 2d 294.

■■ The rights of creditors of the transferor where there has been a violation of the Act have been defined precisely by the courts of Illinois. The Act gives the creditor neither title to, nor a lien upon the goods fraudulently transferred. Goldstein v. Greenstone, 1922, 223 Ill.App. 511. In denying recovery to a buyer who sought to recover possession of property that had been levied on under execution by a creditor, the court states in Corrigan v. Miller, 1949, 338 Ill.App. 212, 86 N.E.2d 853, 857:

"* * * The sale being fraudulent and void as to the creditors of Miller, the title to the property in controversy was still in Miller and subject to levy and sale on execution while it remained in the possession of the vendee."

Thus it is seen that the creditor has an equity of avoidance while the goods remain in the possession of the fraudulent transferee, or vendee. This is not a lien, but a mere inchoate right until asserted and ripened by appropriate judicial proceedings.

■ The fraudulent sale or transfer is not an absolute nullity as against the creditor. He may act to validate the transfer, thereby waiving any rights he may have under the Act. Or, the creditor may acquiesce in the transaction, or accept benefits thereunder and, thereby, be estopped to assert his rights. In re Gill-Owen Co., 7 Cir., 1953, 204 F.2d 520.

The rights of creditors to goods or their proceeds, which were the subject of a transfer rendered fraudulent and void by operation of the Illinois Bulk Sales Act, where the property is no longer in the possession of the fraudulent transferee have not been squarely decided by the courts of Illinois. In Coon v. Doss, supra, the property was in the possession of a purchaser from the vendee. The decision determines the rights under the Act of an assignee of a creditor. It holds that he is not a person within the contemplation of the statute and therefore not entitled to its benefits.

The case of Wende v. Zimmer, 1914, 189 Ill.App. 490, as appears from the syllabus and the portion of the certified copy of the opinion quoted in Reply Brief of Atlas Plywood, pp. 7 and 8, appears to have involved the rights of creditors of a vendor as against the property in the possession of another than the immediate vendee. An injunction against removal of the goods from the possession of this successor of the vendee was upheld on the ground that he lacked an adequate remedy at law. The statement by the court that the transfer is voidable, rather than void, indicates the position of the court that under proper circumstances the word "void" as used in the statute may be construed to have the effect of "voidable". Page v. Wright, 1915, 194 Ill.App. 149 is not apposite the Wende dictum, since there the purchaser from the immediate vendee was chargeable with knowledge of the fraudulent nature of the transaction.

Among decisions of federal courts construing the Illinois Bulk Sales Act, only In re Le Maire Cosmetic Co., 7 Cir., 1949, 174 F.2d 749 involved a determination of rights similar to those of the instant case. There the court below had enjoined a creditor from conducting a chattel mortgage foreclosure sale on certain property on the ground that this would constitute a voidable preference under the Bankruptcy Act. The Court of Appeals determined that the subject property had never been transferred to the bankrupt corporation and dissolved the injunction. With respect to the Bulk Sales Act, it is stated that had there been a transfer, such a transfer would be rendered void because of non-compliance with the provisions of the Act. While it appears from the opinion that the

question of the applicability of the Bulk Sales Act to such a transaction was considered, there is no discussion of what, if any, rights the trustee in bankruptcy as successor to the asserted transferee has in the property.

The cases cited by the court in support of its interpretation that a transfer is void as to creditors of the transferor did not determine ·the rights of such creditors as against a successor in interest to the fraudulent transferee, such as a bona fide purchaser, a creditor, or as here, the trustee in bankruptcy of the transferee.[2]

Coon v. Doss has been discussed above. Luthy & Co. v. Paradis, 1921, 299 Ill. 380, 132 N.E. 556 was an action by a creditor to set aside deeds and mortgages and a bill of sale transferring property from the debtor to his wife. Wells v. Lindberg, 1939, 299 Ill.App. 624, 20 N.E. 2d 363 held that a creditor of the transferor could reach goods in the possession of the vendee by garnishment.

Other jurisdictions have analyzed the respective rights here involved. What appears to be the majority holding is stated by way of dictum in Brill v. W. B. Foshay Co., 8 Cir., 1933, 65 F.2d 420, 425, certiorari denied 1933, 290 U.S. 643, 54 S.Ct. 61, 78 L.Ed. 558:

> "* * * It is quite generally held that innocent creditors of a fraudulent grantee, who have acquired a lien and levied on property before any steps have been taken by the creditors of the fraudulent grantor, will hold the property as against such other creditors, though not as against prior lien creditors of the original grantor. * * * *"

 Federal law determines the status of the trustee in bankruptcy with respect to goods in the possession of the bankrupt at the time of bankruptcy. Under Section 70, sub. c of the Bankruptcy Act, Title 11 U.S.C.A. § 110, sub. c (1952), the trustee has the status of an attaching creditor without notice of an unrecorded prior lien. Unless there is a lien under state law, no lien will be enforced in bankruptcy proceedings. Fifth Third Union Trust Co. v. Kennedy, 2 Cir., 1950, 185 F.2d 833. The trustee in bankruptcy gets the title to all property which might have been levied upon and sold under judicial process against the bankrupt. Moore v. Bay, 1931, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133.

Of particular importance to this question are decisions interpreting New York law, since the Supreme Court of Illinois has found the New York Bulk Sales Act, Section 44 of the Personal Property Law of New York, Consol.Laws, c. 41, as corresponding to Section 1 of the Illinois Bulk Sales Act, and has followed the construction thereof by the New York courts. Coon v. Doss, supra.

City of New York v. Johnson, 2 Cir., 1943, 137 F.2d 163, 148 A.L.R. 516 was an action affirming an order of a Referee in Bankruptcy denying the petition of a creditor of a bulk sales transferor to impress a lien upon funds in the hands of a trustee in bankruptcy of the transferee. It is there said that it has been generally held in the United States that where property conveyed in fraud of creditors is first attached by creditors of the transferee who have no knowledge of the fraud, their attachment will prevail as against the rights of defrauded creditors of the transferor. In support of this conclusion the court cites decisions from Tennessee, Iowa, New Jersey Law, Massachusetts and In re Mullen, D.C.Mass.1900, 101 F. 413.

Respecting the question whether a violation of the Bulk Sales Act renders the transfer voidable rather than void, it is said:

> "We are referred to no authority and can see no reason for holding

---

**2.** Where a federal court applies the decision of a state court in a case governed by state law, the decision of the state court "* * * must be on the precise point in controversy in the federal court in order to have binding effect as a precedent therein, * * *." Polk County, Georgia v. Lincoln National Life Insurance Co., 5 Cir., 1959, 262 F.2d 486.

that the word 'void' means more than 'voidable' where the remedies given by the act are invoked, or that the consequences to bona fide purchasers from a fraudulent grantee are materially different under the Bulk Sales Act from such consequences under the Fraudulent Conveyance Act. The Bulk Sales Act gives the creditors of a transferor no rights other than equities which, like those of the creditors of a transferor under the Fraudulent Conveyance Act, can be cut off by bona fide purchasers. * * *" City of New York v. Johnson, supra, 137 F.2d at page 165.

Goods which are the subject of a fraudulent transfer to a debtor are not exempt from his debts but, on the contrary, may be available to his creditors. In re Vanity Fair Shoe Corporation, D. C., 84 F.Supp. 533, affirmed Schwartz v. A. J. Armstrong Co., Inc., 2 Cir., 1950, 179 F.2d 766. That case also determined the relative rights involved here. It follows the Johnson case in the construction of the word "void" as used in the fraudulent conveyance statutes. "But the judicial gloss that 'void' in the fraudulent conveyance statutes means 'voidable' is well established." 84 F.Supp. at page 534.

A few cases have decided this question in favor of the creditors of the transferor, usually under circumstances where the successor in title to the transferee was chargeable with knowledge of the fraudulent character of the transaction. See Sampsell v. Imperial Paper & Color Corporation, 1941, 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293; Midland Shoe Co. v. A. L. & K. Dry Goods Co., Tex.Civ.App. 1926, 281 S.W. 344; Kett v. Masker, 1914, 86 N.J.L. 97, 90 A. 243.

In view of the language of the Wende case and holdings from other jurisdictions which have been followed as precedent by the Illinois courts in the construction of this section of the Illinois Bulk Sales Act, the conclusion that a violation of this statute renders the transfer voidable rather than void against the trustee in bankruptcy of the transferee appears to be a proper construction of this statute. It follows that petitioners' equity of avoidance has been cut off by the rights of the trustee in bankruptcy as attaching lien holder to the proceeds of the assets in his possession.

To hold otherwise would create secret liens on property in favor of unsecured creditors who left their debtors in possession with all indicia of ownership. The sanctions of a penal statute could be invoked against innocent parties such as bona fide purchasers and creditors of the fraudulent vendee. Kasper v. Spokane Merchants' Ass'n, 1915, 87 Wash. 447, 151 P. 800.

Notwithstanding the conclusions of this court as to the applicability of the Bulk Sales Law to this transfer and petitioners' rights thereunder, the petition must be denied on another ground as well. While no definite time has been established when any or all of the petitioners were apprised of the fact that a transfer of the assets from the Illinois to the Wisconsin corporation had occurred, they had knowledge thereof at the time of the first meeting of the general creditors of the Wisconsin corporation, the bankrupt. They appeared at this meeting and joined in voting for the trustee. Petitioners may not now be heard to assert the invalidity of this transfer and demand a pro rata distribution of all the assets in the possession of the trustee to themselves and members of their class while maintaining their status as general creditors of the bankrupt with filed claims, a status based on the assumption agreement and assuming the validity of the transaction.

While the Referee's Conclusion of Law, No. 1, that Illinois law governs the validity of the transfer of the assets in question was not alleged as error by any party in interest, the propriety of that conclusion was questioned on the first hearing of the petition. At that time it appeared from the record that the

Wisconsin corporation, the transferee, did not come into legal existence until after the assets had been physically transferred to Wisconsin. Therefore, a transfer of title could not have occurred at the time of the physical transfer of the assets from Illinois, but must have been deferred until such time as there was a transferee capable of taking title. The substantial validity of a conveyance or transfer of chattel is determined by the law of the state of the actual situs thereof. United States v. Guaranty Trust Co., 1934, 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415; Restatement of Conflict of Laws, § 257.

Subsequent to the hearing, on stipulation of the parties, the record was enlarged by certain documents which reveal that a lease had been entered into in the name of the Wisconsin corporation prior to the date the assets were transferred from Illinois to Wisconsin. Relying principally on the fact of the existence of this lease, petitioners urge that the transfer in question occurred on shipment of the assets from Illinois to Wisconsin, the transferee being either the officers of the Wisconsin corporation as promoters thereof, with subsequent ratification by the corporation of their acts, or the Wisconsin corporation having a de facto existence while in the process of formation. The title to these assets had to be in someone. There were no documents, there was nothing to show that the Illinois corporation ever parted with the title to anyone else prior to the time the Wisconsin corporation came into being. Very strong argument could be made that the transfer occurred in Wisconsin and therefore its consequences are to be governed by Wisconsin law.

Were Wisconsin law applicable to determine the validity of the transfer, petitioners here would not be benefited by its provisions since the Bulk Sales Law of Wisconsin applies only to transfers of property held for sale at retail. Wisconsin Stats. § 241.18 (1955); State Bank of Viroqua v. Jackson, 1952, 261 Wis. 538, 53 N.W.2d 433.

The Referee's findings of fact and conclusions of law are sustained. The record is hereby remanded to the Referee for further proceedings.