## TAMELING et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 315.

Circuit Court of Appeals, Second Circuit.

July 21, 1930.

Van Doren, Conklin & McNevin, of New York City (William R. Conklin and Edward S. Bentley, both of New York City, of counsel), for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and John Vaughan Groner, both of Washington, D. C. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Stanley Suydam, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

On March 15, 1918, Tameling, the taxpayer, filed a "tentative" income tax return for the year 1918, and paid one-fourth of the amount therein shown to be due. On June sixteenth of the same year he filed a final return which disclosed about half as much income as the "tentative" return, and at the same time he paid the unpaid balance of the amount so returned. He was assessed on September 19, 1919, for the amount shown in the "tentative" return; beside the entry were the letters, "Tent." Some time before April 5, 1922, the collector recommended to the Commissioner the reduction of this assessment so that it should correspond with the final return, and a provisional entry to that effect was made upon the roll. To effect this reduction and at the suggestion of the Commissioner, Tameling on April 5, 1922, filed a formal claim for abatement, on which, however, the Commissioner took no action until January 31, 1924. On that day Tameling was advised that his claim for abatement was denied, and that he would in addition be assessed for a deficiency. No assessment was made at that time, in order to give him opportunity to contest, and on February 19, 1924, by "waiver" he extended the Commissioner's time for assessment and collection till June 15, 1925. He then appealed from the provisional finding, and this appeal remained pending till March 6, 1925, when he was assessed for the amount of the deficiency.

The petition is to review the finding of the Board of Tax Appeals affirming the deficiency assessment of March 6, 1925. The argument is that the time within which to levy any assessment upon the final return expired within five years of June 16, 1919 (section 250 (d) of the Act of 1918, 40 Stat. 1083; section 250 (d) of the Act of 1921, 42 Stat. 265), that is, on June 15, 1924. Although this time was extended a year by the "waiver" of February 19, 1924, it expired on June 15, 1925, and if the assessment of March 6, 1925, was not valid, none can now be made or collected. In fact the Commissioner did not prove that the assessment was valid, and he had the burden of doing so. Moreover, if this reasoning be unsound, at least the assessment of September 19, 1919, was invalid, first, because it was made upon the "tentative" return, second, because the Commissioner, who again had the burden, has not shown that it was valid. If so, Tameling is entitled to credit for all sums paid upon it, to be set off against the deficiency assessment.

 Upon the validity of the deficiency assessment we will assume without deciding that the Commissioner had the burden of proof. If so, Tameling, having proved the date of the return, could rely upon the statute (section 250 (d) to support his position that it was too late after June 15, 1924, to collect any tax. The Commissioner therefore had to prove the extension of time ("waiver"), which he indisputably did, and a valid assessment after June 2, 1924 (Russell v. U. S., 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255), and before June 15, 1925. To prove the second he offered in evidence the official assessment roll for 1925, proved that it came from the proper custody, was regular on its face, showed the necessary entries, and purported to be signed by Commissioner Blair, then in

office. This made the roll competent evidence; the authenticity of such an official document appeared prima facie from its custody and its regularity on its face. Bank of United States v. Dandridge, 12 Wheat. 64, 70, 6 L. Ed. 552; Oakes v. U. S., 174 U. S. 778, 796, 19 S. Ct. 864, 43 L. Ed. 1169; Chesapeake & Del. Canal Co. v. U. S., 250 U. S. 123, 128, 39 S. Ct. 407, 63 L. Ed. 889; Wigmore, §§ 2158, 2159. We do not understand that the member of the Board who heard the case doubted this, but he was perplexed by the fact that the evidence showed that the Commissioner at times delegated the signing of the rolls to some deputy. As to the roll for 1925 the evidence is very meagre, but the witness O'Toole did swear that it was the practice of Commissioners generally, either to sign the roll themselves, or to depute "somebody delegated by him" to do so. This apparently covered the year 1925 as well as 1919. The Board were not troubled by this evidence, and accepted the roll; Tameling complains that he relied upon the member's ruling and was misled into inaction.

Before his cross-examination of O'Toole and before he went into his own case it appeared, however, that the member had not finally made up his mind and meant to reserve his ruling; so that there is no ground in the record for supposing that Tameling was unaware of the possibility that the roll might be eventually received. Nevertheless we agree that as to the roll of 1925, and a fortiori as to that of 1919, it appeared that the Commissioner might not have personally signed it. If this made it invalid, the presumption arising from its custody and the regularity of its appearance was rebutted, and the person who had the burden of proof could no longer rely upon it. Hence, to support the decision we must hold that the Commissioner might delegate to a deputy the power to sign an assessment roll.

■ Assessments are prepared in the office of the local collector from the returns; they are then sent to the Commissioner's office, where they are checked and corrected by various assistants. Finally, they go to the Commissioner, who signs them or deputes some one to sign for him. As to 1925 at any rate it does not appear whom he deputed when he did not sign himself. By section 1301(a) of the Revenue Act of 1918 the Commissioner was authorized to employ five deputy commissioners and one assistant whom he might assign to such duties as he chose (40 Stat. 348, 1140). Any one of these could lawfully have signed the roll, whether that was a ministerial duty or more. It does not appear from O'Toole's testimony that during Blair's time the delegate was not one of these six men. If the roll was regular only when so signed, which we do not hold, we must still presume that one of these signed it with due authority. Had Tameling meant to challenge this he should have proved that it was not signed by a deputy, or at least that under Blair's practice others signed at times.

■ The other question is as to setting off the payments made upon the "tentative" assessment against liability upon the deficiency. Tameling must show that he was under no legal duty to make these; this means that he must prove the assessment to have been invalid. He claims a set-off, a cross claim; here at any rate he has the burden, whatever may be said as to the deficiency. As regards this assessment it must be observed first that no question of time can arise; it was made within a few months of the final return. Next, the fact that it was based upon the "tentative" return of March fifteenth is quite irrelevant, as much so after Florsheim Bros. v. U. S., 280 U. S. 453, 50 S. Ct. 215, 74 L. Ed. 542, as before. The Commissioner is free to use any information which he regards trustworthy; he is not bound by the return. The "tentative" return was a sworn admission, which he might well have preferred to the final return, whether because a taxpayer is not apt to overstate his taxes, or because on the merits he thought the method employed nearer right than in the final return.

■ There remains only the attack upon the regularity of the roll of 1919. The most that can be said of the evidence in the record is that it threw doubt upon whether Commissioner Roper had in fact signed the roll. Nobody identified his signature, and there was evidence that it had been his practice at times to direct assistants, who might not be deputies, to sign his name in his stead; it did not appear whether the roll in question was among these. Again we do not decide that even if such an assistant had signed, it was a delegation of more than a ministerial duty. We rest our decision upon the fact that Tameling did not prove that the Commissioner or a deputy had not signed the assessment in question, and that for this reason he did not prove that there was no debt or obligation to be discharged.

Decision affirmed.