Harry B. Smead Company, Inc., for use of The Scandinavian Seed Company and R. Wiboldt, Ltd., Plaintiff in Error, v. J. Oliver Johnson, Inc., Defendant in Error.

Gen. No. 35,038.

Opinion
filed July 6, 1931.

BAKER, HOLDER, SCHMIDT & KOLB, for plaintiff in error.

TOWNLEY, WILD, CAMPBELL & CLARK, for defendant in error; CHARLES V. CLARK and FREDERICK D. CARROLL, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Scandinavian Seed Company (hereafter called plaintiff) seeks the reversal of an adverse judgment in a garnishment suit tried by the court.

The question involved is whether plaintiff was a creditor within the meaning of this word as used in the Bulk Sales Law, Cahill's St. ch. 121a, ¶ 1 *et seq.* and, therefore, entitled to notice of the sale by the Smead Company of its assets.

August 30, 1924, plaintiff sued the Smead Company, asking damages for an alleged breach of contract. April 30, 1925, while said suit was pending, the Smead Company sold all its assets to the defendant, which

sale was finally consummated on or about September 15, 1925. In lieu of compliance with the Bulk Sales Law, defendant employed a certified public accountant to audit the books and accounts of Smead Company, and the claims of all creditors or claimants shown on its books were paid in full before any money was paid to the Smead Company. The plaintiff's name did not appear either on the books of the Smead Company or on the auditor's report, and the president of the Smead Company informed the defendant that there were no creditors not shown on the books and the auditor's report. Defendant had no notice of plaintiff's claim prior to the final payment of the purchase price to the Smead Company. Plaintiff had no notice of the sale.

March 13, 1926, which was after the sale to the defendant had been consummated, plaintiff had a verdict and judgment against the Smead Company for $1,898.40. Subsequently the case was retried and December 21, 1926, plaintiff had a judgment for the same amount. Execution was issued against the Smead Company, which was returned "no property found." This action in garnishment against the defendant followed. The trial court, being of the opinion that plaintiff was not a creditor of the Smead Company entitled to notice of the sale, found for the defendant and entered judgment accordingly.

It has been held that a party holding an unliquidated claim is not a creditor within the meaning of the Bulk Sales Law, Cahill's St. ch. 121a, ¶ 1 et seq. *Superior Plating Works v. Art Metal Crafts Co.,* 218 Ill. App. 148; *Stony Island Trust & Savings Bank for use of Michael Shea v. Stony Island State Savings Bank,* 240 Ill. App. 195. A party, who was not a creditor when a transfer in bulk was made, has no standing to invoke the benefits of the Bulk Sales Act. *Fulrath v. Wolfe,* 250 Ill. App. 130; *Lawndale Sash & Door Co. v. West Side Trust & Savings Bank,* 207 Ill. App. 3.

Plaintiff argues that the term creditor should receive a liberal construction so as to include one who has a claim of any sort, whether absolute or contingent. The Bulk Sales Act is in derogation of the common law and should be construed strictly in its application. There is a sound reason that it should not be applied to parties holding claims in tort, and where the claim is uncertain and contingent the claimant should not be considered a creditor. To hold otherwise would give to claimants possessing uncertain and speculative demands a power to harass and interfere with the business of persons against whom such claims are made. This construction was adopted in *Superior Plating Works v. Art Metal Crafts Co.,* 218 Ill. App. 148, following *Apex Leasing Co. v. Litke,* 159 N. Y. S. 707, in which State the law is similar to ours.

Plaintiff suggests that its claim was based upon a written agreement to sell to Smead Company a certain quantity of grass seed at a specified price; that Smead Company refusing to accept this, plaintiff resold the same and that under such circumstances its claim should be held to be liquidated, citing *White Walnut Coal Co. v. The Crescent Coal & Mining Co.,* 254 Ill. 368. The point whether or not the claim was liquidated was not involved in that case. The issue there was whether on rejection by the buyer of coal contracted to be sold the seller was justified in reselling the coal at markets other than the market at the point of delivery named in the contract with the buyer. In the following cases it has been held that the claim for the difference between the contract price of goods sold and the market value is unliquidated. *Steele-Wedeles Co. v. Shoodoc Pond Packing Co.,* 153 Ill. App. 576; *Higbie v. Rust,* 211 Ill. 333; *Lepman & Heggie v. Inter-State Produce Co.,* 205 Ill. App. 270; *Robison v. Hibbs,* 48 Ill. 408; *Turnbull Joice Lumber Co. v. Chicago Lumber & Coal Co.,* 152 Ill. App. 347;

*Marks v. American Furniture Novelty Co.,* 208 Ill. App. 186.

It should be noted that in the instant case the defendant endeavored in every reasonable way to see that all creditors of the Smead Company were paid in full. Had it complied with the Bulk Sales Law by securing a sworn list of the Smead Company creditors and mailing them a notice instead of paying them in full, plaintiff would not have benefited in any particular as it would not have received any notice. Its judgment was not entered against the Smead Company until nearly 15 months after the final payment by the defendant to the Smead Company.

For the reasons above indicated the judgment is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.