## UNITED STATES v. GOLDBLATT BROS., Inc.

### No. 7797.

Circuit Court of Appeals, Seventh Circuit.

May 23, 1942.

Rehearing Denied June 16, 1942.

578

Nicholas J. Pritzker, Stanford Clinton, and Robert Marks, all of Chicago, Ill., for appellant.

A. A. Armstrong, of Washington, D. C., Samuel O. Clark, Jr., Ass't Atty. Gen., J. Louis Monarch and Joseph M. Jones, Sp. Ass'ts. Atty. Gen., and J. Albert Woll, U. S. Atty., of Chicago, Ill., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

The United States, claiming as a creditor under the Illinois Bulk Sales Law,[1] sued defendant as the purchaser of the major part of the assets of the New Dahl Corporation, to recover an indebtedness for unpaid taxes owing by New Dahl. There was a trial without a jury and the court made findings of fact, stated its conclusions of law thereon, and rendered judgment for the plaintiff. From that judgment, the defendant appeals.

Defendant is the owner of ten department stores located in Chicago and vicinity. Prior to November 22, 1937, New Dahl operated the shoe repair concessions in the stores. Defendant had no share in the ownership of these concessions and no voice in their management; the control was in Norman Dahlman and the members of his immediate family.

For quite sometime prior to November, 1937, New Dahl had been having financial difficulties, and in July of that year matters grew worse and creditors began to complain to the defendant about New Dahl's unpaid bills. Thereafter defendant's vice-president had a number of meetings with Dahlman concerning his corporation's financial troubles. Yet, the aggravation continued, and in November the pay checks of New Dahl to its employes "bounced." Finally, on November 22, 1937, in a sale which was not in the regular course of the business, New Dahl sold to the defendant the bulk of its assets—consisting of all of the physical assets, machinery and equipment which New Dahl had used in its business—and retained nothing but the accounts receivable owing to it by certain of its officers and by its subsidiary, the Crest Shoe Repair Company. These obligations were uncollectible.

At the time of the sale, the parties prepared the agreement and the affidavit required by the Illinois Bulk Sales Act. The affidavit was in the usual form and attached to it was the list of purportedly all of the New Dahl creditors as of the date of the sale. The Government's name appeared nowhere on that list. By the terms of the agreement, the defendant assumed to discharge all of the listed obligations of New Dahl in return for all of the assets, save the accounts receivable owed by the officers and the subsidiary.

The defendant sent to all the listed creditors the notice of sale required by the Bulk Sales Act; it sent none to the plaintiff, although on the date of the sale, New Dahl had the following federal tax liability, and the defendant had knowledge of

---

[1] Ill.Rev.Stat.1941, Chap. 121½, § 78 et seq.

the existence of the plaintiff as a creditor of New Dahl:

| Year | |
|---|---|
| 1936 Income Tax | 717.58 |
| 1936 Social Security Taxes—Title IX | 373.07 |
| Nov. | |
| 1937 Social Security Taxes—Title VIII | 78.74 |
| 1937 Income Taxes | 1,311.79 |
| 1937 Social Security Taxes—Title IX | 1,733.58 |

Defendant discharged only the listed obligations by cash payments of $29,676.75, and on December 31, 1937, paid $39.44 to the Collector of Internal Revenue on account of New Dahl's November 1937 Title VIII Social Security taxes.

The plaintiff's complaint is that the defendant violated the Illinois Bulk Sales Act by failing to serve notice of the bulk sales transaction upon the plaintiff, who, the defendant knew, was a creditor of the bulk vendor. The claimed liability is statutory and is imposed to the extent that the bulk sales vendee has failed to comply with the Act.[2]

The defendant's initial argument against the trial court's judgment is that there was neither admissible nor sufficient evidence binding upon the defendant to establish that the Government was a New Dahl creditor for any amount.

The record discloses that the Government used the filed returns of the New Dahl Corporation to establish the latter's tax liability. The defendant's objection to the evidence is that it is hearsay and not the best evidence.

We believe that the trial court properly admitted the tax returns, not only as evidence of the assessed tax liability for 1936, but also of the 1937 tax obligations. It must be remembered that the returns were introduced to establish the primary liability of New Dahl, and not the primary liability of the defendant. The defendant's liability, if any, would not be for unpaid taxes as such, but would be the statutory liability of a bulk vendor to an aggrieved creditor of the bulk vendee. Clearly the tax returns were competent evidence of the taxpayer's liability for taxes, cf. Tameling v. Commissioner, 2 Cir., 43 F.2d 814-816, and established a prima facie liability. If the returns were an inaccurate statement or computation of New Dahl's tax obligations, the defendant had the burden of so proving. The returns were also substantial evidence, for the other evidence in the case is not such as to weaken the Government's prima facie case.

The defendant next contends that in so far as the 1937 Income and Title IX Social Security taxes are concerned, the Government was not a New Dahl creditor within the meaning of the Act, because those items of liability were neither liquidated and certain, nor presently due and owing.

The argument misinterprets not only the nature of the tax liabilities, but also the extent of the statute's applicability. To be sure, the Bulk Sales Act "is in derogation of the common law and penal in nature, and must therefore be strictly construed," Coon v. Doss, 361 Ill. 515, 520, 198 N.E. 341, 343, 102 A.L.R. 561, but strict construction does not further require the reading of limitations into the statute. The word creditor used in the statute has a broad meaning—sufficiently broad to include creditors of every class without limitations, Winthrop, etc., Co. v. Kournetas, 265 Ill.App. 535, 538, 539. It is not restricted to those creditors whose claims, at the time of the sale, were liquidated as to the amount. The statute makes this clear by providing for the listing of "the amounts owing to each [creditor] as near as may be ascertained."

The amount of the 1937 Title IX tax could have been exactly determined on the date of the sale, since it was merely based upon a percentage of New Dahl's payroll. In the case of the income tax, some 40 days remained in the vendor's tax year, but the very nature of the instant transaction made it most unlikely that the vendor would continue in business. Absent even this special circumstance, a reliable approximation of the liability could have been prepared and sent to the Government as part of the notice required by the statute.

Nor is the word "creditor" limited in the statute to those whose claims are presently due and owing. If such were the case, a merchandise creditor would not be a bulk vendor's creditor, within the meaning of the Act, unless the bill was

---

[2] Ill.Rev.Stat., Chap. 121½, § 78 and § 80-a.

due at or before the date of sale. It is significant that the statute contains only the word "owing." That word was not used in the limited sense of a liability that has become due and payable; it was to cover a liability in contra-distinction to a contingent claim which depended upon the occurrence of another event before liability was established. It is true a contingent claim for damages for breach of contract or for a tort is not covered by the Bulk Sales Act, Superior Plating Works v. Art Metal Crafts Co., 218 Ill. App. 148, but the tax items here involved are debts, cf. Shepard v. Commissioner, 7 Cir., 101 F.2d 595, 598, and are within the Act, notwithstanding they were not payable until after the date of the sale.

The defendant further argues that even if the Government was a creditor on the date of the sale, the defendant is not liable under the provisions of the Bulk Sales Act. The contention is that the defendant did not have actual knowledge of the tax claims.

It was the defendant's duty under the statute to send " * * * a notice in writing to each of the creditors of the vendor named in the said statement [list attached to affidavit] or of whom the said vendee shall have knowledge * * *."

■ The trial court found as a fact that on November 17, 1937, the defendant, through its authorized agents, had actual notice of the plaintiff's claims. Our reading of the record shows no reason for us to upset the lower court's finding as not supported by the evidence. We attach no importance to the fact that defendant gained the knowledge prior to the sale and that the notice was to agents other than the ones who actually closed the deal.

■ We must not lose sight of the fact that the purpose of the Act was to prevent a debtor from suddenly alienating substantially all of his assets without notice to his creditors. Coon v. Doss, supra, 361 Ill. 520, 198 N.E. 341, 102 A.L.R. 561. The United States is the common creditor for millions of individuals and many corporations. In the light of this, the very absence of the Government's name from the vendor's list of creditors should have invited the defendant's careful inquiry. In this regard its responsibility was more than a general admonition to the vendor to list all creditors.

The defendant argues that there is no liability for New Dahl's 1937 income tax, because that taxpayer was entitled to a bad debt deduction in the amount of $41,219.51,[3] the accounts receivable.

■ The right to claim a deduction is a statutory privilege. Before the taxpayer may have the benefit of the deduction, it is his burden to prove that the debt was a bona fide obligation and that it became worthless in the tax year in question. That, the defendant did not do.

Affirmed.

MAJOR, Circuit Judge (dissenting).

I disagree with that part of the opinion relative to the 1937 income tax and the 1937 Social Security taxes—Title IX. Insofar as the judgment is predicated upon these two items, I think it should be reversed. In other respects, I approve.

It is important to keep in mind that the plaintiff's sole right to recover is predicated upon the Bulk Sales Act of Illinois. It so declared in its complaint, and the case was tried and decided on that theory. We, therefore, are not concerned with rights which plaintiff might have had if some other procedure had been invoked.

I desire to direct my thought to two inquiries—(1) Was plaintiff a creditor of New Dahl on November 22, 1937, within the meaning of the Illinois Bulk Sales Act? and (2) if so, was there any competent proof of such fact? In my opinion, both questions must be answered in the negative. As to whether plaintiff was a creditor must be determined by the construction given that term by the Illinois courts. The opinion states: "It is not restricted to those creditors whose claims, at the time of the sale, were liquidated as to the amount." In my view, this is a misinterpretation of the Illinois cases. In Superior Plating Works v. Art Metal Crafts Co., 218 Ill.App. 148, a suit to recover damages for breach of contract, in considering whether a claimant was a creditor within the meaning of the Act, the court, in deciding to the contrary, on page 151 of 218 Ill.App., said: " * * * We think it clearly should not be applied to parties holding claims in tort, and the same reasoning would lead us to conclude that the holder of a claim, such as this one, which was uncertain, unliquidated and contingent, would not be a creditor with-

---

[3] 26 U.S.C.A. Int.Rev.Code, § 23 (K).

in the meaning of the act. * * *" This holding was cited with approval in Stony Island T. & S. Bk. v. Stony Island St. S. Bk., 240 Ill.App. 195, a tort case where the same question was presented. Again, in Smead Co., Inc., v. Johnson, Inc., 262 Ill. App. 385, a suit for breach of contract, it was argued that the term creditor should receive a liberal construction so as to include one who has a claim of any sort, whether absolute or contingent. The court rejected this argument and held at page 388 of 262 Ill.App.: "Where the claim is uncertain and contingent the claimant should not be considered a creditor." In this opinion are cited a number of Illinois cases to the effect that a claim for the difference between the contract price of goods sold and the market value is unliquidated. In Lawndale Sash & Door Co. v. West Side Trust and Savings Bank et al., 207 Ill.App. 3, it was held that a lessor was not a creditor at the time of a bulk sale as to future payments provided for in a written lease, on the theory that such payments were contingent upon occupancy.

The Statute requires, as suggested in the opinion, that the claim be owing, and the Illinois courts generally have held that it must be certain, liquidated and not contingent. In my opinion there is little room for affirmative argument that plaintiff, at the time of the sale in question, had a claim against New Dahl which was owing, certain, liquidated and not contingent. No case is cited by the plaintiff which affords any support to its contention in this respect unless it be that of Shepard v. Commissioner, 7 Cir., 101 F.2d 595. It is true we held that a tax may be a debt, and we construed the term "existing debts" to include Federal income taxes subsequently assessed by the Commissioner. In that case, however, the court was not construing the term "creditor" as used in the Illinois Act, but was construing a term used by the parties to an agreement, and took into consideration the understanding and intention of the parties thereto. I doubt that this decision has any bearing upon the instant situation.

Just what claim, if any, the Government has against the income of a citizen as it is received, need not be determined. Whatever be its nature, it seems apparent that it is neither certain nor liquidated, and it is equally obvious that it is contingent upon numerous future events. Such uncertainties and contingencies persist at least until the end of the taxable year. The tax can not be assessed until a return is made, which is not required until March of the following year. Being assessed upon net income, the amount is dependent upon deductions which Congress has provided in the form of personal exemptions, ordinary and necessary business expenses, interest paid on indebtedness, taxes paid, losses, depreciation, depletion and other items not necessary to mention. Would any one contend that he could, today, determine the amount of his income tax for 1942? In addition to the contingencies suggested, the law applicable to the situation has not been enacted. That is a matter which Congress may determine tomorrow, next November, or even at a later time. I suppose, however, that under the opinion, a vendee of this date, under the Bulk Sales Act, would be obligated to recognize the Government as a creditor with a claim, owing, liquidated and certain in amount. It is immaterial that "a reliable approximation of the liability could have been prepared and sent to the Government" unless the plaintiff was a creditor within the meaning of the Act, which, in my judgment, it was not.

The only proof in support of the amount of plaintiff's claim is the income tax return filed by New Dahl March 10, 1938, and the delinquent return under Title IX filed April 12, 1938, both admitted over objection. Thus, the returns made in March and April, 1938, by New Dahl (not a party to the instant litigation) were held to be admissible to prove an essential fact claimed to have existed on November 22, 1937. On what theory these ex parte statements, made long subsequent to the event in controversy, are admissible against the defendant, is not clear. The feeble reason is advanced that they are declarations against interest. Assuming this is correct as to New Dahl, how could they be declarations against interest as to the defendant, who was not a party to, and had nothing to do with, their utterance? Plaintiff and the opinion rely upon Tameling v. Commissioner, 2 Cir., 43 F.2d 814 in support of the admissibility of these returns. That case, however, was a suit between the Commissioner and the taxpayer who had made the return. It would be applicable to the instant situation if the suit were between plaintiff and New Dahl. No rule of evidence is cited, how-

ever, and I know of none which would make them admissible against a third party, as was done.

After holding this evidence admissible, it is said to establish a prima facie liability, and that the defendant had the burden of proving any inaccuracies in these ex parte declarations. This overlooks the fact that the burden was upon the plaintiff to establish its complaint by competent evidence. The record discloses that the returns were not filed until after New Dahl had been visited by a Revenue agent, which was the occasion for a controversy between New Dahl and the defendant as to whether the latter was liable for the taxes. The Revenue agent made up the return, not from the books of New Dahl, but from certain figures on a sheet of paper furnished him by an agent of New Dahl.

The defendant was entitled to be confronted with the best evidence capable of production as proof that plaintiff was a creditor of New Dahl at the time of the sale, and to cross-examine with reference thereto. The admission of these returns, without explanation as to the source of their contents, and without explanation as to why the books of New Dahl were not available, not only deprived defendant of the right of cross-examination, but also improperly shifted to it the burden of proof which should have been maintained by the plaintiff.