NOLTZE MOTOR COMPANY, Inc., a Corporation, Plaintiff,

v.

BURROWS–MOORE PONTIAC, Inc., a Corporation, Defendant and Cross-Plaintiff,

S. D. Crary, Receiver, United States of America, State of Iowa, Carl J. Noltze, Sr., and Mrs. Carl J. Noltze, Cross-Defendants.

Civ. No. 1033.

United States District Court
N. D. Iowa, W. D.
Jan. 20, 1958.

Ervin A. Hutchison (of Hutchison, Hurst & Duggan), Sioux City, Iowa, for plaintiff, Noltze Motor Co., Inc.

C. Frederick Stilwill (of Stilwill & Wilson), Sioux City, Iowa, for defendant and cross-plaintiff, Burrows-Moore Pontiac, Inc.

Francis E. Van Alstine, U. S. Dist. Atty., and Theodore G. Gilinsky, Asst. U. S Dist. Atty., Sioux City, Iowa, for cross-defendant United States.

Wallace W. Huff and Bruce Crary, Sioux City, Iowa, for cross-defendant S D. Crary, receiver.

Daniel K. Murphy, Sioux City, Iowa, for cross-defendants Carl J. Noltze, Sr., and Mrs. Carl J. Noltze.

Norman A. Erbe, Atty. Gen. of Iowa, and Francis J. Pruss, Sp. Asst. Atty. Gen., for Iowa State Tax Commission, for cross-defendant State of Iowa.

GRAVEN, District Judge.

In this case there are many parties and numerous pleadings. However, during the course of the proceedings and during the trial the case resolved itself into a controversy between the cross-defendant United States of America, hereafter referred to as the Government, and the plaintiff Noltze Motor Company, Inc. The controversy between those two parties became limited to the matter of the status of the Government under the Iowa Bulk Sales Act in connection with its claims for federal income taxes against the cross-defendant Carl J. Noltze, hereafter referred to as cross-defendant Noltze. Commencing long prior to 1942 and continuing until well into 1954 the cross-defendant Noltze was engaged in the retail automobile business on a large scale in Sioux City, Iowa. Commencing with the year 1942 and continuing for several tax years thereafter he evaded the payment of a substantial part of his federal income taxes. In 1954 an indictment was returned against him charging him with the evasion of such taxes. On June 9, 1954, he entered a plea of nolo contendere to the indictment. Based on that plea a prison sentence was imposed upon him. Commitment under the sentence was suspended until September 14, 1954. The cross-defendant Noltze was the sole proprietor of the automobile business and he operated it as such under the name of Noltze Motor Company.

The situation faced by the cross-defendant Noltze because of the return of the indictment and the ensuing consequences was such as to cause him to make arrangements for the carrying on of the automobile business other than by means of sole proprietorship. To that end a corporation was organized under the laws of the State of Iowa known as the Noltze Motor Company. That corporation is the plaintiff herein. The cross-defendant Noltze, his relatives, and business associates constituted the officers and stockholders of the corporation.

The cross-defendant Noltze was the owner of a large building in Sioux City, Iowa, known as Noltze Block, in which he carried on his automobile business. The building also contained a number of apartments. On July 12, 1954, he executed two bills of sale to the plaintiff. They covered the automotive parts, automobile accessories, office furniture and fixtures, a stock of used vehicles, and other items used or handled by him in connection with his automobile business. One of the bills of sale covered the furnishings in the apartments in the building. The plaintiff paid the cross-defendant Noltze approximately $35,000 for the property sold to it. Following the sale the plaintiff became the lessee of the entire building. It proceeded to conduct a retail automobile business on the premises.

The building in question was eventually sold to a third party and Burrows-Moore Pontiac, Inc., became the lessee thereof. In connection with its becoming a lessee of the building, it entered into a contract with the plaintiff for the purchase for the sum of $3,400 of certain of

the property which had been included in one of the bills of sale in question. Before making the payment of the purchase price Burrows-Moore Pontiac, Inc., apparently learned that the Government and others were making claims to the property and it withheld making payment of the purchase price. The plaintiff brought an action against it for the purchase price in the District Court of Iowa in and for Woodbury County. It then filed a cross-complaint bringing in possible claimants, among others the Government. The Government then removed to this Court. Proceedings were then had in this Court which resulted in Burrows-Moore Pontiac, Inc., paying into this Court the said $3,400, the transferring of the conflicting claims to the property to the said $3,400, and the discharge of it from further liability. The transaction had on July 12, 1954, between the plaintiff and the cross-defendant Noltze related to the sale of a stock of merchandise and fixtures within the purview of the Iowa Bulk Sales Act and so far as the parties to this action are concerned the said sum of $3,400 is to be regarded as representing part of the proceeds of such a sale.

The Government claims that the cross-defendant Noltze was and is indebted to it in a large amount for federal income taxes. A number of issues were raised in the pleadings. However, the only issues which were finally developed by the evidence and which were argued were the issues as to whether the tax claims of the Government came within the protective provisions of the Iowa Bulk Sales Act, and, if so, whether there was a compliance with the provisions of that Act.

The Iowa Bulk Sales Act appears as Chapter 555, Code of Iowa 1954, I.C.A. Section 555.1 of the Act provides, in part, as follows:

"The sale * * * of any part or the whole of a stock of merchandise and the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular prosecution of the business of the seller * * * shall be void as against the creditors of the seller * * * :

"1. *Inventory.* Unless the seller * * * and purchaser * * * shall, at least seven days before the sale, make a full detailed inventory * * * ; and

"2. *Creditors.* Unless the purchaser * * * demand and receive from the seller * * * a written list of names and addresses of the creditors of the seller * * * with the amount of the indebtedness due or owing to each and certified by the seller * * * under oath, to be a full, accurate, and complete list of his creditors, and of his indebtedness; and

"3. *Notice.* Unless the purchaser * * * shall, at least seven days before taking possession of such merchandise, or merchandise and fixtures, or paying therefor, notify personally or by registered mail, every creditor whose name and address are stated in said list, or of which he has knowledge, of the proposed sale and of the price, terms, and conditions thereof."

Section 555.4 of the Act provides, in part, as follows:

"Any purchaser * * * who shall not conform to the provisions of this chapter shall, upon application of any of the creditors of the seller * * * become a receiver and be held accountable to such creditors for all the goods, wares, merchandise, and fixtures that have come into his possession by virtue of such sale * * *."

It was heretofore noted that the cross-defendant Noltze evaded a substantial amount of federal income taxes commencing with the federal income taxes for 1942. On August 11, 1954, subsequent to the execution of the bills of sale in question, the Government made a jeopardy assessment against him for the claimed amount of the evaded taxes. While the cross-defendant Noltze did enter a plea of nolo contendere to the

**596**

indictment charging him with evasion of federal income taxes and while he concededly owed substantial amounts of federal income taxes for the years in question, yet he did dispute the amounts claimed by the Government. He instituted proceedings in the Tax Court contesting the amount of taxes claimed by the Government. Those proceedings resulted in a stipulation between him and the Government stipulating as to the amount of taxes owing for the several years involved. The stipulation shows that at all times subsequent to the tax year of 1943 the amount of his unpaid income taxes was always substantially in excess of $3,400. As of December 9, 1957, the date of the trial, the amount owing by him was $242,845.11.

In the present case the Government does not base its claim to the proceeds on the priority statute, Section 191, Title 31, United States Code Annotated, or the tax lien statute, Section 6321, Title 26 United States Code. The basis of its claim is that at the time of the sale it was a "creditor" of the cross-defendant Noltze within the purview of the Iowa Bulk Sales Act. The provisions of that Act are similar to the provisions of Bulk Sales Acts of other states.

The plaintiff makes the general claim that the word "creditor" as used in the Bulk Sales Acts does not encompass those governmental agencies to whom merchants are under tax liability. The plaintiff contends that even if such an agency could have such status the Government does not have such status as to the transaction in question because its claim was not "due or owing" at the time of the sale. As heretofore noted, at the time of the sale the jeopardy assessment had not been made and the cross-defendant Noltze was disputing the amount of the taxes claimed by the Government. It is the claim of the plaintiff that such being the case the Government's claim was not a "liquidated" claim and being such did not constitute an "indebtedness due or owing" and that therefore the Government did not at the time of the sale have the status of a "creditor" within the purview of the Iowa Bulk Sales Act.

█ The United States Court of Appeals for this Circuit holds that federal income taxes for a particular year become due at the time the taxpayer is required to file his tax return for such year and that the Government becomes a creditor of the taxpayer at such time. Hartman v. Lauchli, 8 Cir., 1956, 238 F. 2d 881, certiorari denied, 1957, 353 U.S. 965, 77 S.Ct. 1048, 1 L.Ed.2d 915. In that case the Court stated in reference to its holding (238 F.2d at page 887):

"* * * We believe this because, by the terms of the Internal Revenue Code income tax *liability* matures on the day the return is required to be filed, and the *correct amount* of the tax liability becomes *due* at that time, regardless of when the deficiency assessment may be made * * *."

There are no Iowa decisions of the Iowa Supreme Court on the question here involved. Only one case has been found in which there was involved the question as to whether the Government in connection with a claim for federal taxes has the status of a "creditor" under a Bulk Sales Act. That case will be next considered.

In the case of United States v. Goldblatt Bros., 7 Cir., 1942, 128 F.2d 576, certiorari denied 1942, 317 U.S. 662, 63 S.Ct. 63, 87 L.Ed. 532, there was involved the Illinois Bulk Sales Act, Ill.Rev.Stat. 1941, ch. 121½, § 78 et seq. In that case the sale in question took place on November 22, 1937. The purchaser secured a list of creditors from the seller and sent notices to them. The Government was not listed as a creditor but the buyer had knowledge that the seller's federal income taxes and Social Security taxes for the year of 1936 were unpaid and that similar taxes would become owing for the year of 1937. The amount of such taxes for the year of 1937 would not become known until the end of the year. The Government asserted a claim against the buyer not only for the taxes for the year of 1936 but also for the year of

1937. The Circuit Court of Appeals for the Seventh Circuit held that the Government was a "creditor" within the provisions of the Illinois Bulk Sales Act both as to the 1936 and 1937 taxes. One member of the Court dissented as to the holding in regard to the 1937 taxes. In the majority opinion it is stated (128 F.2d at page 579):

> "Nor is the word 'creditor' limited in the statute to those whose claims are presently due and owing. * * *."

In that opinion it is further stated (128 F.2d at page 580):

> " * * * the tax items here involved are debts * * * and are within the Act, notwithstanding they were not payable until after the date of the sale."

In that opinion it is further stated on the same page:

> "We must not lose sight of the fact that the purpose of the Act was to prevent a debtor from suddenly alienating substantially all of his assets without notice to his creditors. * * * The United States is the common creditor for millions of individuals and many corporations. In the light of this, the very absence of the Government's name from the vendor's list of creditors should have invited the defendant's careful inquiry. * * *."

See also Hart v. Evans, 1947, 330 Ill.App. 385, 71 N.E.2d 546, 550, and Landers Frary & Clark v. Vischer Products Co., 7 Cir., 1953, 201 F.2d 319, 323, in which the case of United States v. Goldblatt Bros., supra, is cited.

It should be noted that in the present case the Government's claim is not based in any part upon taxes for the year in which the sale took place but is based on taxes for years antedating the year of the sale. In the case of United States v. Goldblatt Bros., supra, as heretofore noted, part of the claim of the Government was for taxes for the year in which the sale was made.

There are some cases in which there is involved the question of the status under a Bulk Sales Act of tax claims of agencies other than the United States.

The case of Richards-Conover Hardware Co. v. Sharp, 1939, 150 Kan. 506, 95 P.2d 360, involved the claim of a Kansas county for personal property taxes relating to a hardware business which the seller had failed to pay. The county was not given the notice prescribed to be given to creditors under the Kansas Bulk Sales Act, Gen.St.1935, 58–101 et seq. The county sought to enforce its claim against the property which was the subject matter of the sale then in the possession of the purchasers. The purchasers of the property resisted the enforcement on the ground, among other grounds, that the county was not a "creditor" within the meaning of the Kansas Bulk Sales Act. The Kansas Supreme Court held that the county was a creditor within the meaning of the Kansas Bulk Sales Act. It stated (at page 365 of 95 P.2d):

> " * * * Appellee argues that to be a creditor one must have a debt due him upon which an action can be maintained. That definition is too narrow. * * *."

It further stated (at page 366 of 95 P.2d):

> " * * * The county, being a creditor of the hardware company, and the bulk sales law not having been complied with as applied to the county, it could follow the goods sold in the hands of the purchasers * * *. Therefore, we are not concerned with whether or not the taxes were a lien upon the goods sold at the time the contract was consummated and the purchasers took possession. * * *."

The case of Lindstrom v. Spicher, 1925, 53 N.D. 195, 205 N.W. 231, 41 A.L.R. 968, involved county personal property taxes relating to a stock of merchandise which the seller had failed to pay. The county was not given notice of the sale. The North Dakota Bulk Sales Act, Comp.

Laws 1913, § 7224 et seq., unlike the Iowa Act, contains a definition of "creditor." That definition is quite broad. The North Dakota Supreme Court held that under that definition the county was a "creditor" within the purview of the North Dakota Bulk Sales Act and that it could enforce its claim for the taxes against the stock of merchandise in the possession of the buyer. That Court stated (at page 233 of 205 N.W.):

> "The term 'creditor' includes artificial persons, such as bodies politic or corporate * * *. We can conceive of no reason why the Legislature, in enacting the Bulk Sales Act should have intended * * * that the payment of taxes should not be assured thereby as well as the payment of other obligations. * * *."

■ Federal income taxes, unlike many forms of property taxes, give rise to personal liability on the part of the taxpayer for the payment of them.

In the case of St. Paul-Mercury Indemnity Co., etc. v. Hoey, 1945, 325 Ill. App. 693, 60 N.E.2d 641, the Appellate Court of Illinois, First District, Second Division, there was involved the sale of an Illinois trucking business. At the time of the sale the seller was indebted to the State of Iowa for ton-mile taxes. The St. Paul-Mercury Indemnity Co. was a surety to the State of Iowa for the payment of those taxes. It paid the State of Iowa those taxes and then as a subrogee of the State of Iowa sought recovery of them from the buyer because of non-compliance with the Illinois Bulk Sales Act. The Court directed that only the abstract of its opinion be published. The holdings of the Court as set forth in such abstract were that the sale was within the scope of the Illinois Bulk Sales Act; that at the time of the sale the State of Iowa was a creditor of the seller within the purview of that Act; and that the buyer was liable to the St. Paul-Mercury Indemnity Co. as a subrogee of the State of Iowa for the amount of those taxes because of non-compliance

with the provisions of the Illinois Bulk Sales Act.

■ It seems clear that at the time of the sale in question the cross-defendant Noltze was personally liable to the Government on an "indebtedness" then "due or owing" and that the Government had the status of a "creditor" within the purview of the Iowa Bulk Sales Act.

The remaining contention of the plaintiff is that even if the Government did have the status of a creditor within the provision of the Iowa Bulk Sales Act there was a substantial compliance with the provisions of the Act. It appears that shortly prior to the sale or in connection with the sale all of the so-called business bills and accounts were paid in full. At or about the time the sale was being completed the treasurer-accountant of the plaintiff conferred with the then attorney for the plaintiff as to the matter of compliance with the Iowa Bulk Sales Act. That officer informed the attorney that all of the business bills and accounts had been paid and that the seller had no creditors. That officer testified that the attorney told him that since the seller had no creditors it would not be necessary to comply with the provisions of the Bulk Sales Act. The plaintiff admits that it did not give the Government notice of the sale prescribed by Section 555.1 of the Act and that it did not demand or require of the seller the oath as to his creditors prescribed by Section 555.1(2) of the Act.

■■ A purchaser who does not require the oath on the part of the seller prescribed in Section 555.1(2) of the Iowa Bulk Sales Act must bear the consequences in case there are unpaid creditors of the seller. Pratt Paper Co. v. Eiffler, 1923, 196 Iowa 199, 194 N.W. 370. The Iowa Bulk Sales Act has been the subject of Iowa Law Review comment. 14 Iowa L.Rev. 100 (1928); 20 Iowa L. Rev. 815 (1935). In both of those Comments it is noted that good faith on the part of the purchaser does not absolve him from compliance with the provisions of the Act. It seems clear that advice

of counsel will not excuse compliance with the provisions of the Act.

 It is the holding of the Court (1) that at the time of the sale in question the Government was a "creditor" of the cross-defendant Noltze within the purview of the Iowa Bulk Sales Act; (2) that as to it there was no compliance with the provisions of that Act, and (3) that the claim of the Government to the $3,400 is prior and superior to the claims of all the other parties.

It is ordered that the $3,400 in question be paid to the Government to be applied upon its claim for taxes against the cross-defendant Noltze.

The foregoing opinion shall constitute the findings of fact and conclusions of law herein. Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.