UNITED STATES of America, Plaintiff,

v.

A.F. COMPANY OF ILLINOIS, formerly known as Brookline Industries, Inc.; Yale Security, Inc.; and Henry Soss & Company, Inc., Defendants.

No. 89 C 825.

United States District Court, N.D. Illinois, E.D.

March 15, 1990.

---

Karen Smith, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff.

Frederick M. Steiger, Karfeld, Mertz, Frapolli & Steiger, St. Louis, Mo., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The United States of America has sued A.F. Company of Illinois, Yale Security, Inc., and a corporation which Yale owns, Henry Soss & Company, Inc., under 26 U.S.C. §§ 7401 and 7403 (1982), as amend-

ed, to set aside a sale of assets among the defendants and to foreclose on federal tax liens. A.F. has not appeared in this action, but Yale and Soss have. The parties have filed cross-motions for summary judgment under Rule 56, Fed.R.Civ.Pro. Yale and Soss have also moved "in the alternative" for leave to amend their answer pursuant to Rule 15(a).

■ The court will turn to Yale and Soss's motion to amend first. The court regards it skeptically. Yale and Soss state that they erroneously admitted in their amended answer that Yale had purchased some of A.F.'s assets, and ask the court for leave to change their answer.[1] On the next page, however, Yale and Soss ask the court to rule on the present motions assuming that Yale had purchased some of these assets, implying that they seek amendment only if the court does not grant them summary judgment with the assumption in mind. See Memorandum of Law in Support of Defendants' Motion 6–7.

Pleading is not a game. Courts and parties must rely on them to work with cases effectively. Without knowing whether parties dispute legal and factual issues, this court cannot determine whether a sufficient case or controversy exists for this court to have jurisdiction. See U.S. Const., art. III § 2. The Article III courts are not in the business of deciding hypothetical disputes. What Yale and Soss request is tantamount to requesting the advice of the court, not a ruling. The court will not comply with this request. Instead, the court will decide their motion to amend their answer first, then turn to the parties' motions for summary judgment.

■ Rule 15(a) provides in pertinent part: "[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; leave shall be freely given when justice so requires." The pertinent question in deciding a motion under Rule 15(a) is whether

---

1. The United States contends that Yale and Soss have not complied with the Local Rules of this court in making their motion to amend. The government does not say which rules Yale and Soss transgressed. The government seems to assume that the only request for amendment appears in the body of Yale and Soss's memorandum of law, while in fact Yale and Soss requested amendment in their notice of motion for summary judgment.

the opposing party will suffer undue prejudice on account of the amendment, prejudice which the moving party could have spared his or her opponent had a motion to amend been made sooner. See *In re Olympia Brewing Co. Securities Litigation*, 674 F.Supp. 597, 605–06 (N.D.Ill. 1987); *Conroy Datsun Ltd. v. Nissan Motor Corp. in U.S.A.*, 506 F.Supp. 1051, 1054 (N.D.Ill.1980).

■ Yale and Soss want to amend their answer to deny the allegations in ¶ 11 and the first sentence of ¶ 12 of the complaint of the United States. The United States has claimed no prejudice on account of the proposed amendment, and thus the court will grant Yale and Soss leave to amend.

The court now turns to the cross-motions for summary judgment.[2] The facts are undisputed, unless noted. A.F. was once known as Brookline Industries, Inc., an Illinois corporation. Around June 7, 1988, a revenue officer of the federal Internal Revenue Service ("IRS"), Mary Janic, secured from Brookline a tax return for the quarter ending June 30, 1987. No money was paid to the IRS at the time Janic secured the return, and from her records Janic could tell that Brookline owed a substantial amount in taxes. On July 18, 1988, the IRS filed a tax lien for some of the taxes owed with the Recorder of Deeds, Cook County, Illinois on Brookline's property.

As the IRS was filing its lien, Brookline was negotiating with Yale for a sale of its assets. These negotiations had been underway at least since March 31, 1988, when Brookline and Yale entered into a confidentiality agreement. During these negotiations, Yale loaned Brookline close to $150,-000.00.[3] On July 9, 1988, Brookline and Yale entered into an Assets Purchase Agreement. Included in this Agreement was Schedule 2D, a statement of Brookline's undisclosed liabilities.[4] That schedule contained summaries of the taxes owing to Illinois, California, Missouri, and the federal government.[5] Brookline disclosed that it owed the federal government $716,-675.39. Yale claims that Brookline's president had assured it prior to and on July 9 that Brookline no longer owed the government for these taxes, and essentially asked Yale to ignore the schedule. The government disputes this.

Brookline and Yale determined that the proposed sale would constitute a bulk transfer under Article 6 of the Uniform Commercial Code ("UCC"). Yale thus requested a sworn list of creditors pursuant to Illinois' version of the UCC, Ill.Rev.Stat. ch. 26, ¶ 6–104 (1987). The list which Brookline provided did not name the United States or the IRS. Purportedly relying on Brookline's earlier representations, Yale did not inquire about Brookline's tax liabilities. Yale sent notices of the proposed bulk transfer to Brookline's listed creditors on July 14, 1989, but it did not notify the IRS. Additionally, Yale published and filed

2. The court may address this motion despite granting Yale and Soss leave to amend their answer. The Federal Rules of Civil Procedure do not require—nay, even prohibit—a reply to an answer. See Rule 7(a).

3. These facts come from an Affidavit of Gary Anderson, Brookline's former president, which the government has submitted in support of its motion for summary judgment. The dates in Anderson's affidavit are off. Anderson states that the parties signed the confidentiality agreement in March 1989; the attached agreement is dated March 1988. Anderson further claims that Brookline and Yale entered the Assets Purchase Agreement in July 1989; all other facts indicate that this agreement was entered in July 1988. The court attributes the discrepancies to typographical errors.

Ignoring these errors, Yale and Soss object to Anderson's testimony that Yale loaned Brookline money and had intimate knowledge of Brookline's finances prior to July 9, 1988. Yale and Soss have not referred the court to any facts which indicate that this is a matter of dispute, so the court will disregard their objection.

4. Undisclosed, that is, on Brookline's 1987 balance sheet.

5. The government has included the schedules as an exhibit in support of its Local Rule 12(*l*) statement of undisputed facts. In their Local Rule 12(m) response to this statement, Yale and Soss deny the government's contention that the schedule labelled "Federal Taxs" [sic] reflected Brookline's federal tax liabilities. Yale and Soss indicate nothing in the record which disputes the government's contention, and so pursuant to Local Rule 12(m) the court must treat the government's allegation as admitted.

notices in California pursuant to Cal.Comm. Code § 6107 (West 1988 Supp.). The IRS did not see these notices.

Shortly before August 1, 1988, the day on which Yale and Brookline had agreed to close the sale of assets, one of Brookline's attorneys called Yale's vice president, Michael Lukse, and informed him that the IRS had filed a lien in Cook County. According to Lukse, this attorney told him that these were the only taxes which Brookline owed.[6] Brookline attorney Roger Noback, who may have been the same attorney who notified Lukse of the lien, also told Yale's attorney Geoffrey Chinn of the lien. The parties dispute the content of Noback's disclosures and representations to Chinn regarding Brookline's tax liabilities, and what Chinn did in response. It is undisputed, however, that Chinn became worried about other undisclosed liabilities, since heretofore Yale allegedly had understood that Brookline had paid its taxes. Chinn called his son, who is a tax attorney. His son told him that the IRS could recover unpaid taxes from a purchaser of a taxpayer's assets only if it had filed a lien.[7]

Aware now of the filed lien, Yale agreed to pay it and deduct it from what it promised to pay Brookline for its assets. Yale through Brookline thus paid the IRS $386,-652.28. Officer Janic knew or should have known that this payment did not clear up Brookline's arrearage, but she released the IRS's filed lien anyway. That same day, Brookline sold its assets. For some reason unknown to the court, prior to the sale Yale assigned its right under the Assets Purchase Agreement to receive the assets of Brookline's Henry Soss Division to Soss. Yale assigned its right to Brookline's remaining assets to a new Delaware corporation which also went under the name of Brookline Industries, Inc. Yale is the sole owner of this corporation.

The government now seeks a declaration that tax liens which arose when it assessed taxes against Brookline continue to attach to Brookline's former assets. Yale and Soss contend that they do not. Yale and Soss first submit that the Internal Revenue Code compels this conclusion. Under the Code, the government acquires a lien in the amount of unpaid taxes and penalties upon all of a taxpayer's property when a taxpayer neglects or refuses to pay the tax. See 26 U.S.C. § 6321 (1982). As attorney Chinn's son explained to his father, however, this lien is not valid "as against any purchaser [of the taxpayer's property] until notice thereof which meets the requirements of [*id.* at § 6323(f)] has been filed by the Secretary [of the Treasury]." *Id.* at § 6323(a). Yale and Soss argue that since the IRS discharged its only filed lien on Brookline's property, its remaining, unfiled liens do not attach to Brookline's former assets.

Genuine issues of fact prevent the court from entering summary judgment in favor of any party on this ground. Attorney Chinn's son did not explain that Section 6323(h)(6) defines § 6323(a)'s "purchaser" as "a person who, for adequate and full consideration … acquires an interest … in property which is valid under local law against subsequent purchasers without actual notice." According to § 6323(i)(1),

> an organization shall be deemed for purposes of a particular transaction to have actual notice … of any fact from the time such fact is brought to the attention of the individual conducting such transaction, and in any event from the time such fact would have been brought to such individual's attention if the organization had exercised due diligence. An

6. The court has taken this allegation from ¶ 28 of Lukse's declaration. Since Yale and Soss did not cite it in their Local Rule 12(*l*) statement, the Local Rules did not require the government to admit or deny this allegation. See Local Rule 12(m). The court will thus treat it as a disputed fact.

7. The government refers to the affidavits of Chinn and Noback in alleging that Yale knew of at least some of the liabilities at issue in this suit. Yale and Soss have not denied this allegation in accordance with Local Rule 12(m), but the affidavits themselves indicate that there is a dispute over whether the liabilities which Noback allegedly described to Chinn are the ones at issue in this suit, or are ones which Yale and Brookline subsequently discharged.

organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routine. Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of his regular duties or unless he has reason to know of the transaction and that the transaction would be materially affected by the information.

In the government's opinion, Yale and Soss knew prior to purchasing Brookline's assets that the government had tax liens on Brookline's property in addition to the one lien which the IRS had filed in Cook County. The government has supported these factual allegations with evidence. If the government's assertions are correct, Yale and Soss were not "purchasers" of Brookline's assets under § 6323(a).

The government submits that even if it turns out that Yale and Soss did not know of its liens on Brookline's property, they could have learned of the liens had they exercised due diligence. The parties disagree plenty over what Yale and Soss did or should have done, without arguing what level of diligence § 6323(i)(1) requires. Read most restrictively, § 6323(i)(1) mandates due diligence only with respect to how an organization's parts communicate with one another, and does not impose a duty upon the organization to investigate whether assets have tax liens upon them. The Senate and House committee reports which accompanied § 6323 seem to indicate that this is the proper interpretation of the statute. See Federal Tax Lien Act of 1966, H.R.Rep. No. 1884, 89th Cong.2d Sess. 12 (1966); Federal Tax Lien Act of 1966, Sen. Rep. No. 1708, 89th Cong.2d Sess. 14 (1966), U.S.Code Cong. & Admin.News 1966, p. 3722. Some courts have suggested, however, that § 6323 requires a purchaser to do something more. See, for example, *Jersey Shore State Bank v. United States*, 479 U.S. 442, 448–49, 107 S.Ct. 782, 786–87, 93 L.Ed.2d 800 (1987) (dicta); *United States v. Estate of Swan*, 441 F.2d 1082 (5th Cir.1971); *United States v. Metro Const. Co., Inc.*, 439 F.Supp. 308 (C.D.Cal. 1977), rev'd on other grounds, 602 F.2d 879 (9th Cir.1979).

Regardless of how this court ultimately interprets "due diligence" under § 6323(i)(1), the parties will have to have a trial. Even if the court accepted the most liberal interpretation of § 6323(i)(1), and could impute actual knowledge to a purchaser when the facts and circumstances known to the purchaser give the purchaser reason to know that a tax lien exists, it would still be up to a trier of fact to determine if the facts and circumstances actually gave rise to such an inference in a particular case. See *United States v. Coconut Grove Bank*, 545 F.2d 502 (5th Cir. 1977). The court thus will have to hold a trial to determine if the government's tax liens on Yale and Soss's property are valid.

■ Yale and Soss next argue that regardless of the validity of the government's liens, they complied with the UCC, and thus they or their assigns acquired Brookline's assets free of the liens. The defendants' UCC arguments proceed in several directions. Soss suggests first that all of the assets which Soss received were in California. California's version of Article 6 does not contain the rigorous notice provisions found in Illinois's version; it is undisputed that Yale complied with California's rules. Soss thus contends that it is entitled to summary judgment. Soss runs into a procedural roadblock, however: it failed to present its allegation about the location of its assets in its Local Rule 12(*l*) statement. The government thus had no obligation to respond to this assertion, and the court cannot determine whether it is undisputed.

■ Yale and Soss's second UCC argument also relies on California law. They contend that by complying with California's UCC notice provisions, they gave the government a sufficient opportunity to protect its security interests in all of Brookline's assets, wherever located. Yale and Soss have not presented any cases which support their California dreaming. They construct an argument from the general

definitions of notice contained in both Illinois and California's version of the UCC, §§ 1–201(26)–(27), but these are exactly as the law describes them: general definitions. The giving of "notice" under §§ 1–201(26)–(27) never suffices as proper notice under either state's version of Article 6. See Ill.Rev.Stat. ch. 26, ¶ 6–105; Cal.Comm. Code § 6105(1) (transfer is fraudulent and void against any creditor of transferor if transferring parties fail to comply with Article 6 notice requirements). Moreover, California's Article 6 applies only to bulk transfers made within that state. See *id.* at § 1105(2) (California's Article 6 effective only to extent permitted under Article 6); *id.* at § 6102(4) (specifying bulk transfers only within state as subject to Article 6). There is no suggestion that notice under California's Article 6 serves as sufficient notice for bulk transfers outside of California.

■ Yale and Soss return to Illinois law in their final argument, that they complied with Illinois's version of Article 6 sufficiently to receive Brookline's assets free and clear of federal tax liens. The parties agree that under the UCC, notice of an impending bulk sale must be sent to all creditors of the transferor. Upon demand of the transferee, the transferor must provide a list of his or her creditors prior to the sale. See Ill.Rev.Stat. ch. 26 at ¶ 6–104(a). "Responsibility for the completeness and accuracy of the list of creditors rests on the transferor, and the transfer is not rendered ineffective by errors or omissions therein, unless the transferee is shown to have had knowledge." *Id.* at ¶ 6–104(c). Once the transferee receives the list, it is his or her responsibility to give statutory notice of the bulk sale to all persons on that list, as well as "all other persons who are known to the transferee to hold or assert claims against the transferor." *Id.* at ¶ 6–106(3). A transfer completed without proper notice to a deserving creditor makes the transfer ineffective as to that creditor. See *id.* at ¶ 6–105.

■ In view of the parties' factual disputes, and applying Illinois substantive law, Yale and Soss are not entitled to summary judgment. As noted earlier, the government contends that Yale as transferee knew that the IRS had claims against Brookline's assets at the time Yale sent notices of the bulk sale, but failed to notify the government properly under Article 6. The government argues further that Yale and Soss cannot hide behind Brookline's list of creditors, as Yale knew when it saw the list that it was incomplete. The government has supported these factual assertions with evidence, and thus the court may not enter summary judgment in Yale and Soss's favor.[8]

■ The government makes one last effort to seek summary judgment in its favor. It argues that even if Yale actually did not know the government was a creditor of Brookline, Yale should have investigated the possibility under the circumstances presented in this case. Article 6 did not require Yale to make such an investigation. Section 6–106(3) requires a transferee to send notice to persons who are on the transferor's list of creditors and those "who are *known* to the transferee to hold or assert claims against the transferor." (Emphasis added) Section 1–201(25) states that a person "knows" of a fact under the UCC "when he has actual knowledge of it." If Yale actually did not know of the government's tax claims, or its assertion of such claims, then Yale did not need to send the government notice under the UCC.[9]

---

**8.** That Soss was not the Article 6 transferee of Brookline's assets does not help Soss. Section 6–109(1) provides: "When the title of a transferee to property is subject to a defect by reason of his non-compliance with the requirements of [Article 6], then ... a purchaser of any such property from such transferee ... who takes with notice of such non-compliance takes subject to such defect...." In light of Yale's ownership of Soss, there is a genuine issue whether Soss had notice of the alleged defect in the title to Brookline's assets. See Ill.Rev.Stat. ch. 26 § 1–201(25) (person has notice when, among other things, he or she has reason to know of a fact from all the facts and circumstances actually known to that person).

**9.** The government cites *United States v. Goldblatt Brothers, Inc.,* 128 F.2d 576 (7th Cir.1942), to the contrary. There the court ruled, in interpreting pre-UCC Illinois law, that "the very absence of the Government's name from the ven-

The court denies both motions for summary judgment. The clerk shall set this matter for trial.

dor's list of creditors" in a bulk sales transaction "should have invited [the vendee's] careful inquiry." *Id.* at 580. The government contends that *Goldblatt* controls this case notwithstanding enactment of the UCC. In view of § 6–106(3)'s plain use of "knows" and § 1–201(25)'s unadorned definition of that word, *Goldblatt* conflicts with the UCC. It thus no longer states the duty which a transferee in a bulk sale owes to the transferor's creditors under Illinois law. See Ill.Rev.Stat. ch. 26, ¶ 1–103; *Fellows v. Miller,* 141 Ill.App.3d 639, 640, 95 Ill.Dec. 900, 902, 490 N.E.2d 992, 994 (1986) (pre-UCC principles of law are valid unless displaced by particular provisions of the UCC).